PEOPLE v CASEY

Docket No. 51723. Submitted June 4, 1980, at Detroit.—Decided December 16, 1980. Leave to appeal applied for.

Edal L. Casey was convicted of armed robbery and possession of a firearm during the commission of a felony, Recorder's Court of Detroit, David E. Wilson, J. Defendant appeals, alleging 1) that his arrest was illegal and that, consequently, two confessions which he gave to police were inadmissible, 2) that the trial court erroneously barred admission of documents recording out-of-court identifications of the defendant by two witnesses, and 3) that the convictions of both armed robbery and felony-firearm constitute double jeopardy. *Held:*

1. The defendant was temporarily detained on a probation violation when he was arrested for investigation of armed robbery on the basis of a tip and a matching general description. No warrant was obtained. Defendant was placed in three lineups and was identified as the perpetrator of the armed robbery. Defendant then gave the police a confession, and later gave a second confession. The informant gave no facts which led him to conclude that the defendant had committed the crime. The description was very general and would fit thousands of persons. Further, the reliability of the informant was not established. Therefore, there was insufficient evidence to obtain an arrest warrant. Also, an investigatory arrest is illegal. The police did obtain a so-called "reverse writ" in order to keep the defendant in custody. However, there is no constitutional authority for the issuance of such a writ. The defendant's arrest was, therefore, illegal.

2. Defendant confessed only after the third lineup, at which

REFERENCES FOR POINTS IN HEADNOTES

[1,2] 5 Am Jur 2d, Arrest §§ 44, 46.

What constitutes probably cause for arrest — Supreme Court cases. 28 L Ed 2d 978.

[3] 5 Am Jur 2d, Arrest § 45.

[4] 5 Am Jur 2d, Arrest § 75.

[5, 6] 29 Am Jur 2d, Evidence § 546.

[7] 29 Am Jur 2d, Evidence § 372.

Admissibility of evidence as to extrajudicial or pretrial identification of accused. 71 ALR2d 449.

he was positively identified. There was clearly a causal connection between the illegal arrest and the confessions. The confessions, therefore, were not admissible.

3. The documents were admissible because an exception to the hearsay rule is made for statements concerning identification where the declarant testifies at trial and is subject to cross-examination. The trial court's error in excluding them was harmless, however.

4. Defendant was not subjected to double jeopardy.

Reversed and remanded.

1. ARREST — WARRANTLESS ARREST — PROBABLE CAUSE — INFORMANTS.

Probable cause to arrest a suspect without a warrant on the basis of an informant's tip may be established where the informant has specified some of the underlying circumstances which led him to believe that the suspect committed a crime and the arresting officer is able to articulate some of the circumstances which led him to conclude that the informant was reliable or credible; a warrantless arrest is valid if this information, along with any other the police might have, would create an honest belief in the mind of a reasonable and prudent person that probable cause exists.

2. ARREST — PROBABLE CAUSE — INFORMANTS.

A mere statement, by a police officer seeking an arrest warrant based on information provided by an informant's tip, that the informant is reliable is not sufficient to establish the informant's credibility.

3. ARREST — INVESTIGATORY ARREST — ILLEGAL ARREST.

An investigatory arrest is an illegal arrest.

4. CRIMINAL LAW — CONSTITUTIONAL LAW — REVERSE WRIT.

There is no constitutional authority for a so-called "reverse writ", the purpose of which is to get judicial approval for extended detention of a suspect without the issuance of a warrant.

5. CRIMINAL LAW — CONFESSIONS — EVIDENCE — ILLEGAL ARREST.

A confession that is solely the product of an illegal arrest is inadmissible into evidence.

6. CRIMINAL LAW — CONFESSIONS — ILLEGAL ARREST.

A lengthy time span between an illegal arrest and a subsequent confession by a defendant is not, in and of itself, always sufficient to dissipate the taint of the initial illegality.

7. Criminal Law — Evidence — Hearsay — Identification —
 Rules of Evidence.
 Statements concerning identification may be admissible, under an
 exception to the hearsay rule, where the declarant testifies at
 trial and is subject to cross-examination (MRE 801[d][1]).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Don W. Atkins,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant on appeal.

Before: R. M. Maher, P.J., and Bronson and T. C. Quinn,* JJ.

Per Curiam. Following a jury trial in Detroit Recorder's Court, defendant was found guilty of armed robbery in contravention of MCL 750.529; MSA 28.797 and possession of a firearm during the commission of a felony, contrary to MCL 750.227b; MSA 28.424(2). Defendant was sentenced to 10 to 20 years in prison for the armed robbery. Additionally, he received the mandatory two-year consecutive sentence for the felony-firearm conviction.

This case was originally disposed of via a motion to affirm granted by this Court on November 9, 1979. On May 19, 1980, the Supreme Court reversed and remanded to this Court for plenary consideration.[1]

At approximately 10:30 a.m., on March 31, 1978, the Shifrin-Willens store at 2028 East Eight Mile Road in Detroit was robbed. On April 18, 1978, Sergeant Michael Doud of the Detroit Police Department received a call at the first precinct from

---

* Former Court of Appeals Judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] 408 Mich 935.

an FBI undercover agent who stated that defendant Edal Casey was the man who perpetrated the robbery. The FBI agent gave no details and stated that his information came from "a source".

Following the call, Sergeant Doud had Officer Daniel Budz investigate defendant's previous arrest record to determine if Casey's physical appearance matched the description given by witnesses to the robbery. The officers determined that defendant's description did match that of the perpetrator of the offense.

Based on the phone call and the physical characteristics, Officer Budz called the 14th precinct, where defendant was being temporarily detained on a probation violation, and requested a "hold" on Casey (warrantless arrest) for investigation of armed robbery. During a *Walker*[2] hearing, Officer Doud testified that he had defendant held; but for this arrest, defendant would have been free to go.

On April 19, 1978, defendant was told his *Miranda*[3] rights at 8:30 a.m. At this time, defendant was not interrogated and said nothing. Sergeant Doud explained that he wanted to conduct lineups prior to interrogation. Two lineups were conducted at 10:55 a.m. and 11 a.m. respectively. At each lineup, one witness tentatively identified defendant as the perpetrator of the Shifrin-Willens robbery, but neither was positive.

Following these lineups, a request for a "reverse writ" was made, and a judge of the Recorder's Court issued the writ.[4] Thereafter, defendant was

[2] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

[3] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

[4] By the "reverse writ" procedure, the local police seek judicial approval for extended detention of a suspect without the issuance of a warrant.

put in another lineup at 1 p.m. A witness to the Shifrin-Willens robbery positively identified defendant at this time. At 1:40 p.m. defendant confessed to the crime. A second confession was obtained at 4 p.m.

Defendant contends that his arrest on the robbery charge was without probable cause, and thus, illegal. He further argues that his confessions are inadmissible as the tainted fruit of the unconstitutional arrest.

Before a police officer may effect an arrest without a warrant, he must have probable cause to believe that the suspect committed a felony. MCL 764.15(c); MSA 28.874(c). In *People v Walker,* 401 Mich 572; 259 NW2d 1 (1977), the Michigan Supreme Court formulated a test based on the United States Supreme Court decision in *Aguilar v Texas,* 378 US 108; 84 S Ct 1509; 12 L Ed 2d 723 (1964), for determining when probable cause to arrest may be considered established by an informant's tip. First, the informant must specify some of the underlying circumstances which led to his conclusion that the suspect committed the crime. Second, the officer must be able to articulate some of the underlying circumstances which led him to conclude the informant was reliable or credible. If this information, along with any other the police might have, would create an honest belief that probable cause existed in the mind of a reasonable and prudent person, a warrantless arrest is valid. *People v Wirth,* 87 Mich App 41, 44; 273 NW2d 104 (1978), and authorities cited therein. In the instant case, neither of the conditions precedent to establishing the validity of a warrantless arrest were present.

*Spinelli v United States,* 393 US 410; 89 S Ct 584; 21 L Ed 2d 637 (1969), is controlling. In

*Spinelli,* the Court held that insufficient underlying circumstances were divulged by the informant to justify the issuance of a warrant. The warrant affidavit provided that the FBI "has been informed by a confidential informant that William Spinelli is operating a handbook and accepting wagers and disseminating wagering information by means of the telephones". *Id.,* 414. The Supreme Court held:

"The tip does not contain a sufficient statement of the underlying circumstances from which the informer concluded that Spinelli was running a bookmaking operation. We are not told how the FBI's source received his information—it is not alleged that the informant personally observed Spinelli at work or that he had ever placed a bet with him. Moreover, if the informant came by the information indirectly, he did not explain why his sources were reliable. *Cf. Jaben v United States,* 381 US 214 [85 S Ct 1365; 14 L Ed 2d 345] (1965). In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Id.,* 416.

See, also, *People v Mosley (After Remand),* 400 Mich 181; 254 NW2d 29 (1977), *cert den* 434 US 861; 98 S Ct 189; 54 L Ed 2d 135 (1977).

The same problem is present in the case *sub judice.* The undercover FBI agent who informed Sergeant Doud that defendant was the perpetrator of the robbery provided no facts which led him to this conclusion, except that he had been so informed by his secret source. None of the source's reasons for concluding that defendant committed the crime were divulged.

The prosecution contends, however, that the tip was corroborated by other evidence, providing a reasonable basis for believing defendant had committed the crime. This corroboration is said to be the fact that defendant's arrest record matched the "general description" of the culprit given by the witnesses who observed the robbery. An examination of the record, however, reveals nothing peculiarly distinctive about the defendant's appearance. When asked, "What about the description caught your eye?", Officer Budz answered, "the height mostly". When asked what the height was, Budz responded, "I can't remember, six-one, six-three, something like that". When asked if the height and the tip were the only reasons why he arrested defendant, Officer Budz indicated in the negative. Another reason was "instinct"—an instinct which he admitted was unsupported "by any hard evidence or facts" aside from those mentioned.

A later description Officer Budz gave of the Shifrin-Willens robber based on witnesses' observations indicated that the culprit was a black male, in his twenties, medium build, medium complexion, no distinguishing marks, and no facial hair. This description would include literally thousands of persons. Moreover, defendant was not clean shaven.[5] The description simply did not provide substantial corroborative evidence of the tip. *Mosley, supra.*

[5] We recognize that defendant could have grown a moustache after the crime was committed. However, in view of the fact that the description the police had of the culprit included such a large class of people as potential suspects, we would expect the police to be considerably more certain that the perpetrator of the crime and defendant were one and the same before effecting an arrest. Where the description of the suspect is as general as the one here, even minor deviations from the suspect's actual appearance and the description given by witnesses should give the police reason to pause before arresting.

The reliability of the source of information was also not adequately established. In *Spinelli, supra,* the Court held that where the police affiant seeking a warrant merely swears that his confidant is "reliable", this is insufficient to establish his credibility. See, also, *People v Atkins,* 96 Mich App 672, 679; 293 NW2d 671 (1980), *lv den* 409 Mich 876 (1980). In the instant case, the Detroit police officers merely assumed that the FBI undercover agent's informant was reliable. No testimony was even offered that the agent swore his source was reliable, let alone testimony that the source had provided useful information in the past.

Sergeant Doud, who took the call from the undercover FBI agent, forthrightly admitted that he had no reason to believe the agent's source was credible. He further stated that he was primarily relying on the credibility of the FBI agent, himself. The agent's credibility, however, was of secondary importance. Information from an unreliable source does not become better because it has been filtered through a credible individual.

The fact is that defendant was illegally detained. He was held for "investigation of armed robbery". An investigatory arrest is an illegal arrest. It is an admission that probable cause to arrest does not exist. *People v Martin,* 94 Mich App 649, 653; 290 NW2d 48 (1980), *Brown v Illinois,* 422 US 590; 95 S Ct 2254; 45 L Ed 2d 416 (1975). In the instant case, Sergeant Doud conceded that at the time he had defendant detained, insufficient evidence existed to obtain an arrest warrant for armed robbery.

Before leaving this issue, we also note that the police officers in no way improved their legal position by obtaining a "reverse writ" from the Detroit Recorder's Court. A prisoner's right to

habeas corpus is granted by Const 1963, art 1, § 12. Habeas corpus is a proceeding the purpose of which is to cause the release of persons illegally confined. The Constitution provides no authority for a "reverse writ"—the purpose of which is apparently to get judicial approval of an illegal confinement, precisely what Const 1963, art 1, § 12 sought to protect against. See, *People v Antonio Johnson,* 85 Mich App 247; 271 NW2d 177 (1978) (N. J. KAUFMAN, J., concurring).

Having concluded that defendant's arrest was illegal, we still must ascertain if either or both of the confessions must be suppressed. In *Martin, supra,* 653-654, we said:

"Finally, defendant argues that his confession, as the fruit of an illegal arrest, should have been suppressed. A confession that is solely the product of an illegal arrest is inadmissible on constitutional grounds. *Wong Sun v United States,* 371 US 471, 491; 83 S Ct 407; 9 L Ed 2d 441 (1963). For the confession to be admitted, it must be determined that there was no causal connection between the tainted arrest and the confession. *Brown, supra* at 602, *People v Mosley (On Remand),* 72 Mich App 289, 293; 249 NW2d 393 (1976). Proof of the giving of *Miranda* warnings merely satisfies threshold Fourth Amendment requirements. *Dunaway v New York,* 442 US 200; 99 S Ct 2248; 60 L Ed 2d 824 (1979). One must also look at the time lapse between the defective arrest and the confession, the flagrancy of official misconduct and any intervening circumstances. *Dunaway, supra, Brown, supra,* 603."

In the instant matter, the record clearly shows a causal connection between the tainted arrest and the confession. Only after defendant was positively identified in the 1 p.m. lineup, which could not have occurred but for the illegal arrest, did he

confess.[6] No intervening circumstances existed which would make either the 1:40 p.m. or 4 p.m. confessions admissible. Defendant was allowed to see his mother and girl friend, but only after both confessions were made. An examination of the facts in *Mosley (After Remand), supra,* appearing in *People v Mosley,* 51 Mich App 105; 214 NW2d 564 (1974), convinces us that a lengthy time span between arrest and confession is not, in and of itself, always sufficient to dissipate the taint of the initial illegality. As in *Mosley (After Remand),* we find that the prosecution did not sustain its burden of proof on this point. We also conclude that the official misconduct here was "flagrant" in the sense that it was extremely conspicuous. If one carefully examines the proceedings in this matter, the illegality of the arrest is obvious. By so finding, however, we do not wish to imply that we believe the officers in question intentionally acted improperly.

Defendant also asserts that the trial court erred in barring the admission of documents which recorded out-of-court identifications of defendant as the felon by two witnesses. The purpose of admitting the documents was to show inconsistencies with the in-court testimony of the witnesses. The trial court concluded that the documents constituted impermissible hearsay. We agree with defendant. MRE 801(d)(1) specifically excludes from the definition of hearsay statements concerning identification where the declarant testifies at trial and is subject to cross-examination. The error was harmless in this case, however. Nonetheless, if defen-

---

[6] This is not the kind of intervening circumstance which tends to dissipate the taint of an illegal arrest. In *Mosley, supra,* the Court reversed despite the fact that defendant did not confess until confronted with the statement of an accomplice implicating him in the crime.

dant is retried and desires to admit the documents in question, this must be allowed.

Defendant's final claim that convictions for both felony-firearm and armed robbery violate constitutional protections against double jeopardy has been decided adversely to his position. *Wayne Prosecutor v Recorder's Court Judge,* 406 Mich 374; 280 NW2d 793 (1979), *app dismissed sub nom Brintley v Michigan,* 444 US 948; 100 S Ct 418; 62 L Ed 2d 317 (1979).

Reversed and remanded.