PEOPLE v PERCY

Docket No. 60132. Submitted October 19, 1982, at Detroit.—Decided
    July 7, 1983. Leave to appeal denied, 418 Mich 929.

    James R. Percy was convicted of armed robbery by a jury in
    Recorder's Court of Detroit and was sentenced to life imprison-
    ment, John P. O'Brien, J. The Court of Appeals affirmed in an
    unpublished per curiam opinion released on April 5, 1978. On
    March 25, 1981, defendant filed a delayed motion for new trial
    and a motion to vacate his sentence. The trial court conducted
    an evidentiary hearing regarding defendant's claim of ineffec-
    tive assistance of counsel and denied defendant's motions, John
    P. O'Brien, J. Defendant appealed by leave granted. *Held:*

        1. Admission of testimony by police officers as to the com-
    plainant's identification of defendant does not require reversal
    of defendant's conviction.

        2. Defense counsel's failure to move to suppress evidence of

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 7] 29 Am Jur 2d, Evidence § 373.

    Admissibility of evidence as to extrajudicial or pretrial identifica-
    tion of accused. 71 ALR2d 449.

[2] 21A Am Jur 2d, Criminal Law §§ 752, 984-987.

    Modern status of rules and standards in state courts as to adequacy
    of defense counsel's representation of criminal client. 2 ALR4th
    27.

[3] 29 Am Jur 2d, Evidence § 327.

    Admissibility, under Rule 404(b) of Federal Rules of Evidence, of
    evidence of other crimes, wrongs, or acts not similar to offense
    charged. 41 ALR Fed 497.

[4] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*

[5] 75 Am Jur 2d, Trial §§ 613, 925.

[6] 21A Am Jur 2d, Criminal Law §§ 751, 986.

    Adequacy of defense counsel's representation of criminal client
    regarding appellate and postconviction remedies. 15 ALR4th 582,
    superseding in part 74 ALR2d 1390.

    Adequacy of defense counsel's representation of criminal client
    regarding post-plea remedies. 13 ALR4th 533.

[8] 5 Am Jur 2d, Appeal and Error § 776.

defendant's prior convictions did not deny defendant effective assistance of counsel.

3. The trial court's allowance of the prosecutor's ill-advised remarks in his closing arguments bolstering the credibility of the complainant was not so offensive as to require reversal.

4. Defendant's contention that the trial court gave a jury instruction to the effect that the defendant's failure to testify could be used as evidence of guilt is rejected.

5. Defendant's contention that his sentence was improperly based on erroneous information is rejected.

6. Defendant has had a new appeal. Therefore, he has already received the proper remedy for his claim that he was denied effective assistance of counsel on his first appeal.

Defendant's conviction is affirmed.

R. M. MAHER, P.J., concurred in part and dissented in part. He would hold that it was error for the trial court to allow the police officer witnesses to testify as to the complainant's words and assertive conduct in identifying the defendant. Furthermore, he finds that, although the allowance by the trial court of that testimony was, in itself, harmless beyond a reasonable doubt, the allowance of the actions of the prosecutor in his references to the testimony taken in conjunction with the allowance of the testimony was so offensive to the maintenance of a sound judicial system as to require reversal. He would reverse defendant's conviction and order him a new trial on the basis of this issue alone. He agrees that defendant's remaining issues are without merit.

### OPINION OF THE COURT

1. EVIDENCE — CRIMINAL IDENTIFICATION — THIRD-PARTY TESTIMONY.

The admission of third-party testimony concerning an identification by a complainant is not an error so offensive to the maintenance of a sound judicial system that it can never be considered harmless.

2. CRIMINAL LAW — ASSISTANCE OF COUNSEL — MISTAKE OF COUNSEL.

Michigan courts apply a two-part test in analyzing an ineffective assistance of counsel claim: first, the court assesses defense counsel's performance in light of the standard that defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations; second, the court considers whether defense counsel made a "serious mistake" and, if so, whether but for

this mistake defendant would have had a reasonably likely chance of acquittal.

3. CRIMINAL LAW — EVIDENCE — IMPEACHMENT — PRIOR CONVICTIONS.

The admission of evidence of prior convictions for impeachment purposes is left to the discretion of the trial court; in exercising its discretion, the trial court must balance the probative value of such evidence against its prejudicial effect.

4. CRIMINAL LAW — PROSECUTORIAL COMMENT — PRESERVING QUESTION.

Appellate review of a prosecutor's closing argument is precluded in the absence of objection unless failure to consider the issue would result in a miscarriage of justice.

5. APPEAL — JURY INSTRUCTIONS — AMBIGUOUS INSTRUCTIONS.

Ambiguity in the language of a trial court's jury instructions may be resolved by reading the instructions as a whole.

6. APPEAL — ASSISTANCE OF COUNSEL — NEW APPEAL.

The proper remedy, upon a finding of ineffective assistance of appellate counsel, is to grant a new appeal.

PARTIAL CONCURRENCE AND PARTIAL DISSENT BY R. M. MAHER, P.J.

7. CRIMINAL LAW — EVIDENCE — CRIMINAL IDENTIFICATION — WITNESSES — HEARSAY.

*Prior to the effective date of the Michigan Rules of Evidence one witness could testify only as to the circumstances surrounding the identification of the defendant by another witness; testimony as to the nature and quality of the identification was considered inadmissible hearsay.*

8. APPEAL — HARMLESS ERROR.

*A two-part test is employed to determine whether an error was harmless: (1) was the error so offensive to the maintenance of a sound judicial system as to require reversal, and (2) if not, was the error harmless beyond a reasonable doubt, that is, had the trial been free of the error, is it not reasonably possible that any juror would have voted to acquit.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Dep-

uty Chief, Civil and Appeals, and *Carolyn Schmidt,* Assistant Prosecuting Attorney, for the people.

*Gary Granader,* for defendant.

Before: R. M. Maher, P.J., and Bronson and Cynar, JJ.

Per Curiam. Defendant, tried before a jury in 1976, was convicted of armed robbery, MCL 750.529; MSA 28.797, and was sentenced to life imprisonment. This Court affirmed his conviction in an unpublished per curiam opinion.[1] On March 25, 1981, defendant filed a delayed motion for a new trial and a motion to vacate his sentence. The trial court conducted an evidentiary hearing on June 12, 1981, regarding defendant's claim of ineffective assistance of counsel. The trial court denied defendant's motions. Subsequently, this Court granted defendant's application for leave to appeal.

Defendant raises several issues on appeal, none of which require reversal.

We agree with Judge Maher's result regarding all of the issues in this case except one. We cannot agree that the admission of third-party testimony concerning an identification by a complainant is an error so offensive to the maintenance of a sound judicial system that it can never be considered harmless. The testimony of the third-party witnesses concerning the prior identification by the complainant constitutes harmless error in this case. The complainant was positive in his identification of defendant. Testimony which repeated the fact of identification was cumulative. See *People v Gwinn,* 111 Mich App 223, 246, 258; 314 NW2d

---

[1] *People v Percy,* (Docket No. 30260, decided April 5, 1978).

562 (1981); *People v Price,* 112 Mich App 791, 803; 317 NW2d 249 (1982), *lv den* 414 Mich 946 (1982); *People v Turner,* 116 Mich App 421, 424; 323 NW2d 425 (1982).

Defendant's conviction is affirmed.

R. M. MAHER, P.J. *(concurring in part and dissenting in part).* In the early afternoon of March 10, 1976, a man walked into the Marwell bookstore on the Wayne State University campus and announced to the clerk: "Give me all the money out of the cash register and I have a gun." The man never revealed the gun but it appeared as if he clutched one in his hand stuffed into his right coat pocket. The clerk, Ronno Gray, emptied the register of $62 and the robber fled the store.

The following day, Gray went to the Wayne State patrol station to search through some photographs for the picture of the robber. Officers Leonard Corsetti and Tim Houghtaling were present during the photo line-up. When Gray got towards the end of the stack of photographs he recognized a man as the robber. The photograph depicted the defendant. The next day, Gray viewed a live five-man line-up at the Detroit police headquarters conducted by Sergeant James Sleginies. Gray selected defendant out of the line-up.

Defendant, tried before a jury later that year, was convicted of armed robbery, MCL 750.529; MSA 28.797, and was sentenced to serve life in prison. This Court affirmed his conviction in an unpublished per curiam opinion.[1] On March 25, 1981, defendant filed a delayed motion for new trial and a motion to vacate his sentence. The trial court conducted an evidentiary hearing on June 12, 1981, on defendant's claim of ineffective assis-

---

[1] *People v Percy,* (Docket No. 30260, decided April 5, 1978).

tance of counsel. The trial court denied defendant's motions. Subsequently, this Court granted defendant's application for leave to appeal.

Defendant raises several issues on appeal, one of which I believe requires reversal.

At trial, Ronno Gray, the complaining witness, testified to his prior identifications of defendant. Shortly thereafter, the three police officers, present during one or the other of Gray's identifications, took the witness stand in succession. Officer Corsetti testified that the complainant picked the 275th photograph out of 280 pictures, indicating that when Gray selected defendant's picture he said, "That's him, that's the person". He then pointed to defendant as the man whose picture Gray had selected. Officer Houghtaling testified that Gray had chosen the photograph of the defendant and had told Officer Corsetti that it depicted the man who had robbed him. Sergeant Sleginies testified that Gray picked the defendant out of the five-man line-up. He then pointed defendant out in the courtroom. In his closing argument, the prosecutor took up the theme established by the officers' testimony and argued the certainty of Gray's identification, illustrating his argument with references to the officers' testimony.

Defendant claims that the officers' testimony was inadmissible hearsay and that its admission requires reversal of his conviction. MRE 801(d)(1) pertains to testimony about a witness's prior identification. It provides:

"(d) Statements which are not hearsay. A statement is not hearsay if—

"(1) *Prior statement of witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is one

of identification of a person made after perceiving him".
(Emphasis added.)

Defendant, however, was tried before the effective
date of the Michigan Rules of Evidence. Therefore,
we must consider defendant's claim in light of the
law in effect at the time of his trial.

Several Supreme Court cases have addressed the
permissible limits of testimony by a third party
recounting an identification by another witness
where that witness testifies at trial. The general
rule was that the third party could testify only as
to the circumstances surrounding the identifica-
tion. Testimony as to the nature and quality of the
identification was considered inadmissible hearsay.
*People v Londe,* 230 Mich 484; 203 NW 93 (1925);
*People v Poe,* 388 Mich 611; 202 NW2d 320 (1972).
In *People v Sanford,* 402 Mich 460; 265 NW2d 1
(1978), however, the five justices who considered
the issue disagreed as to whether a police officer's
testimony involved hearsay.[2] The officer had re-
lated the witness's words and assertive conduct
identifying the defendant. Justice (now Chief Jus-
tice) WILLIAMS, joined by Justices COLEMAN and
MOODY, found that the testimony was not hearsay:

"In this case the officer testified to an event he had
witnessed, the identification of the defendants by Mr.
Anderson, the complaining witness. He was not testify-
ing to the truth of the identification statement but to
the fact that it was made and the circumstances sur-
rounding it. Hearsay is defined as a statement, other
than one made by the declarant while testifying at the
trial or hearing, offered in evidence to prove the truth
of the matter asserted. Since the police officer was not
testifying to prove that the defendants were the alleged

[2] Justice LEVIN and then-Chief Justice KAVANAGH did not reach
this issue but considered the admissibility of the testimony only under
MRE 801(d)(1).

assailants, but only to show that \* \* \* he witnessed an
event, the identification of the defendants by Mr. An-
derson, his testimony was not hearsay." *People v San-
ford, supra,* p 491. (Footnote omitted.)

Justice RYAN, joined by Justice FITZGERALD, dis-
agreed:

"The officer's testimony concerning the identification
consisted of a repetition of Mr. Anderson's words and a
description of his assertive conduct when identifying
the defendants and, as such, went beyond the limited
range of the facts and circumstances of the identifica-
tion setting. The admission of this testimony could only
have the purpose of bolstering and fortifying Ander-
son's in-court and out-of-court identification of the de-
fendants as his assailants, the truth of which had been
damagingly challenged by defense counsel on cross-ex-
amination. Serving no other valid purpose, the testi-
mony was inadmissible hearsay \* \* \*." *People v San-
ford, supra,* pp 496-497.

Obviously, *Sanford* did not determine whether a
third-party's testimony about a witness's identify-
ing words and assertive conduct was admissible
prior to the adoption of MRE 801(d)(1). I believe,
however, that, for the reasons stated in his opin-
ion, Justice RYAN's position in *Sanford* represents
the better view.

In the present case, the officers testified as to
Gray's words and assertive conduct in identifying
the defendant as the robber. They did not confine
their testimony to the circumstances surrounding
Gray's identifications. Accordingly, their testimony
was inadmissible hearsay.

Admission of this testimony does not require
reversal, however, if it constitutes harmless error.
To decide this question,

"[a] two-part test is employed: (1) was the error so offensive to the maintenance of a sound judicial system as to require reversal, and (2) if not, was the error harmless beyond a reasonable doubt, that is, had the trial been free of the error, is it not reasonably possible that any juror would have voted to acquit?" (Citations omitted.) *People v Oliver,* 111 Mich App 734, 757; 314 NW2d 740 (1981).

Although I find that the error was harmless beyond a reasonable doubt, I conclude that it was so offensive to the maintenance of a sound judicial system as to require reversal. One purpose of the first part of the harmless error test is to deter prosecutorial misconduct. See *People v Oliver, supra; People v Christensen,* 64 Mich App 23, 33; 235 NW2d 50 (1975), *lv den* 397 Mich 839 (1976). In the instant case, the prosecutor deliberately set out to put in evidence the police officers' testimony as to Gray's statements and assertive conduct identifying defendant. Their testimony was hardly inadvertent. In addition, the prosecutor instructed two of the officers to point out to the jury the man whom Gray had identified. The prosecutor further emphasized the officers' testimony by referring to it several times in his closing arguments. I conclude that the admission of the officers' testimony was not harmless error. I would reverse defendant's conviction and order him a new trial.

Defendant's remaining issues are without merit.

At the evidentiary hearing defendant testified that his attorney advised him not to testify at his trial because, if he did so, the prosecutor would impeach him with two prior convictions for assault with intent to commit unarmed robbery, MCL 750.88; MSA 28.283, and uttering and publishing, MCL 750.249; MSA 28.446. Defense counsel had not and never did bring a motion to suppress

evidence of defendant's prior convictions. Defendant followed his attorney's advice and did not take the witness stand at his trial.

Defendant contends that his attorney's failure to move to suppress evidence of his prior convictions denied him effective assistance of counsel. In analyzing an ineffective assistance of counsel claim, Michigan courts apply a two-part test. See *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976). First, the court assesses defense counsel's performance in light of the standard of competency announced in *Beasley v United States,* 491 F2d 687, 696 (CA 6, 1974):

"Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations."

Second, the court considers whether defense counsel made a "serious mistake" and, if so, whether "but for this mistake defendant would have had a reasonably likely chance of acquittal". *People v Garcia, supra,* p 266.

I find that defense counsel did not perform incompetently in failing to move for the suppression of defendant's prior convictions. At the time of trial in 1976, admission of evidence of prior convictions for impeachment purposes was controlled by MCL 600.2158; MSA 27A.2158 and MCL 600.2159; MSA 27A.2159. See *People v Worden,* 91 Mich App 666; 284 NW2d 159 (1979). The Supreme Court has construed these statutes to permit the introduction of such evidence in the discretion of the trial court. *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974). In exercising its discretion, the trial court must balance the probative value of such evidence against its prejudicial effect. *People*

*v Worden, supra,* p 672. Defense counsel could have reasonably determined that the trial court would not have granted a motion to suppress both convictions. Defendant's conviction for uttering and publishing bears directly on defendant's credibility. Evidence of his conviction for assault with intent to commit unarmed robbery, although involving a crime similar to the offense charged in this case, is not so prejudicial that a trial court would have clearly excluded it. See *People v Worden, supra,* p 678. In short, while I decline to decide whether the trial court could have properly granted a motion to suppress evidence of defendant's convictions, I find that defense counsel's failure to bring such a motion is consistent with the *Beasley* standard of competence.

Nor do I find that defense counsel made such a "serious mistake" in failing to raise the motion that it requires reversal. Defendant has not shown that, had defense counsel brought the motion, defendant would have had a reasonably likely chance of acquittal.

Defendant next argues that the trial court's allowance of the prosecutor's remarks[3] in his clos-

---

[3] In his closing argument the prosecutor said:

"So have we proved that an armed robbery took place? I think we have. I think Mr. Gray's testimony—you could see what type a young man he is, I don't think he's the type of man to make up a story like this, I don't think he's the kind of person that would falsely accuse or recklessly accuse—he had an opportunity to see and recognize Mr. Percy's face. So, ladies and gentlemen, the reliability of Mr. Gray's ability to identify Mr. Percy—I don't believe that a reasonable mind can argue that there's a reasonable doubt."

The prosecutor, in his rebuttal argument, continued:

"When [Gray] first looked at the first line-up, he said the man is not in there. When he saw the picture in the stack, he picked it out immediately. When he viewed Mr. Percy in the line-up, he picked him out immediately and I don't honestly believe that we can argue that there's a reasonable doubt. He doesn't strike me, Mr. Gray, is *[sic]* the kind of person that would be reckless about a thing like that. He did not pick out the wrong man the first time. He didn't strike me as a vindictive sort of person, he didn't strike me as a sort of person that

ing arguments bolstering the credibility of Gray requires reversal. Because defense counsel did not object to these remarks at trial, this Court cannot review unless its failure to consider the issue would result in a miscarriage of justice. *People v Duncan,* 402 Mich 1; 260 NW2d 58 (1977). I find that the allowance of the prosecutor's ill-advised remarks was not so offensive as to require reversal.

Defendant also maintains that the trial court erred in giving the following jury instruction:

"Now the defendant in this case had every right to sit here and testify before you. However, the law expressly provides that because of the fact that he did not testify that no presumption should arise in your mind, therefore, *that the fact that this defendant didn't testify may be used by you as proof of his guilt or proof of his innocence.* In other words, you should give it no consideration whatsoever." (Emphasis supplied.)

Defendant complains that the trial court, in the passage emphasized above, instructed the jury that the defendant's failure to testify could be used as evidence of guilt. But, as the defendant recognizes, this passage is ambiguous. Where language in a trial court's jury instructions is ambiguous, the ambiguity may be resolved by reading the instructions as a whole. *People v Beard,* 78 Mich App 636; 261 NW2d 27 (1977). Reading the above excerpted language in its entirety, the trial court's meaning is clear: the jury was not to consider in its deliberations the defendant's failure to testify. Consequently, I reject defendant's claim of error.

Defendant has also urged that his sentence was

would wildly make an accusation. He was very certain and very positive in his testimony here today—when he testified yesterday and all the other matters which confirm and support his ability to identify Mr. Percy have been testified to."

improperly based on erroneous information. Unlike defendant, I am not convinced that the court based its sentence on the unsubstantiated assumption that defendant used a gun in the holdup. Compare *People v Westerfield,* 71 Mich App 618; 248 NW2d 641 (1976).

Finally, defendant asserts that he was denied effective assistance of appellate counsel on his first appeal. The proper remedy, upon a finding of ineffective assistance of appellate counsel, is to grant a new appeal. *People v Oster (On Resubmission),* 97 Mich App 122; 294 NW2d 253 (1980), *lv den* 411 Mich 920 (1981). Defendant has had his new appeal.