PEOPLE v MALONE

Docket No. 120518. Submitted January 15, 1992, at Detroit. Decided April 6, 1992, at 9:00 A.M. Leave to appeal sought.

Donald Malone was convicted by a jury in the Detroit Recorder's Court, Thomas E. Jackson, J., of first-degree murder and possession of a firearm during the commission of a felony. He appealed.

The Court of Appeals *held:*

1. Testimony by a third-party witness recounting an out-of-court identification of a defendant, including the identifier's statements, is not hearsay and is admissible at the discretion of a trial court where, as in this case, the identifier also testifies and is subject to cross-examination concerning the identification. MRE 801(d)(1)(C). The trial court did not abuse its discretion in allowing the testimony of witnesses who had observed an identification of the defendant at a photographic lineup.

2. The defendant failed to object to alleged improper remarks by the prosecutor during closing argument. Because a cautionary jury instruction would have cured any prejudice to the defendant and no miscarriage of justice would result from this Court's failure to consider the issue, review by this Court of those remarks is precluded.

3. The defendant, by not raising in the trial court the claim that he was denied a fair trial because the prosecutor withheld during discovery evidence that would have contradicted the testimony by which he was identified, failed to preserve the claim for appeal.

4. There was sufficient evidence to support the defendant's conviction of first-degree murder.

Affirmed.

CONNOR, J., concurring, stated that he is compelled by Administrative Order No. 1990-6, 426 Mich lxxxiv, to follow *People v Newcomb,* 190 Mich App 424 (1991), in agreeing with

REFERENCES

Am Jur 2d, Evidence §§ 371, 371.8, 373.

Admissibility and weight of extrajudicial or pretrial identification where witness was unable or failed to make in-court identification. 29 ALR4th 104.

the majority that third-party testimony concerning an out-of-court identification properly may be admitted at trial. Otherwise, he would hold that MRE 801(d)(1) does not permit such testimony and would reverse the defendant's convictions and remand for a new trial.

CRIMINAL LAW — IDENTIFICATION EVIDENCE — THIRD-PARTY TESTIMONY.

Testimony by a third-party witness recounting an out-of-court identification of a defendant, including the identifier's statements, is not hearsay and is admissible at the discretion of the trial court where the identifier also testifies and is subject to cross-examination concerning the identification (MRE 801[d][1] [C]).

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Jeffrey Caminsky,* Assistant Prosecuting Attorney, for the people.

*Neil J. Leithauser,* for the defendant on appeal.

Before: MURPHY, P.J., and CAVANAGH and CONNOR, JJ.

CAVANAGH, J. Following a jury trial, defendant was convicted of first-degree murder, MCL 750.316; MSA 28.548, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). Defendant was sentenced to life in prison for the murder conviction and to a consecutive two-year term for the felony-firearm conviction. In this appeal, brought as of right, defendant claims that he was denied a fair trial because of evidentiary error and prosecutorial misconduct and that the evidence of his guilt was insufficient. We affirm.

At trial, Robin Lasenby, a hostile witness, testified that he was outside with Carey Jackson on the

evening of July 26, 1988, when he noticed two men jump out of a black Omni and run toward a local grocery store. Lasenby was able to identify the defendant as one of the two men because he had seen him around the neighborhood during the past couple of years. It appeared to this witness that the defendant was carrying a dark object in his hand and that the two men were "about to stretch somebody." A minute later, Lasenby heard three loud sounds that could have been gunfire and he saw the men return and the black car speed away.

A couple of days later, the defendant approached the witness and told him that what he did was really none of the witness' business. Lasenby responded that what they were discussing would go no further. And, after failing to appear to testify at the preliminary examination, this witness was kept in police custody as a material witness.

Carey Jackson testified next and confirmed that he had been with Robin Lasenby when the shooting occurred. However, contrary to a previous statement he had purportedly given to the police, he could not identify either of the men that had gotten out of the black Omni. When questioned about his earlier signed statement identifying defendant as one of the men, the witness denied that the statement or signature was his. Carey Jackson also had been detained by the police as a material witness.

The police officer who had interviewed Carey Jackson then testified that, in a prior statement, Carey Jackson had identified the defendant as one of the men he had seen that day. According to the police officer, the witness also stated that, after hearing three shots, he saw the defendant with a black pistol in his hand. The trial court instructed the jury that this evidence was being admitted to impeach the earlier testimony of Carey Jackson.

The police officer that was in charge of the investigation also testified with regard to a photographic lineup session he had had with Carey Jackson. When defendant objected to this testimony, the trial court ruled that the evidence could be admitted as substantive evidence. The officer was permitted to continue testifying, and he recalled Carey Jackson picking the defendant's picture out of the photographs displayed.

The prosecution also introduced the testimony of the attorney who had been present with Carey Jackson at the photographic lineup. This witness testified that Carey Jackson said that he thought he recognized two people and that "Number Six was the guy who had the gun."

One of the last witnesses for the prosecution was the victim's friend, Melvin Mann. He testified that he was in a telephone booth outside the grocery store when he heard some shots and saw the defendant run from the back of the Jeep where the victim had been sitting. Mann also testified that there had been bad feelings between the victim and the defendant.

Just before closing arguments, the trial court ruled that the third-party testimony regarding the extrajudicial identification of the defendant was not limited to impeachment and would be admitted as substantive evidence. The trial court noted that if the identification procedure was unfair or caused bias, the court in its discretion could decide not to admit the evidence.

In this appeal, defendant contends that the trial court improperly admitted, over defense objection that the testimony was hearsay, third-party testimony regarding pretrial identification statements. We disagree.

"A statement is not hearsay if . . . [t]he declar-

ant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . one of identification of a person made after perceiving him." MRE 801(d)(1)(C). Furthermore, third-party identification testimony by a police officer, including repetition of the statements, is not hearsay, and the admission of such testimony is within the discretion of the trial court. *People v Newcomb,* 190 Mich App 424, 430; 476 NW2d 749 (1991);[1] MRE 801(d)(1).

Although the issue has not been clearly addressed in our case law, we agree with federal court decisions that have held that the rule was intended, in part, to solve the problem of a witness identifying a defendant before trial but then refusing at trial to acknowledge the identification because of fear of reprisal. *United States v Jarrad,* 754 F2d 1451, 1456 (CA 9, 1985), relying on *United States v Elemy,* 656 F2d 507 (CA 9, 1981). In this situation, the witness' prior identification can be introduced into evidence only by a third party who was present at the original identification.

In this case, we find no error in the trial court's decision to admit the third-party identification testimony. The declarant of the extrajudicial statement testified at trial and was subject to cross-examination. Consequently, under MRE 801(d)(1), the statement is not hearsay. Secondly, the trial court acknowledged that admission of the third-party identification testimony was discretionary, and it apparently exercised this discretion after

[1] Judge MURPHY voted with the majority in *People v Michael,* 181 Mich App 236; 448 NW2d 786 (1989), but feels bound to follow *People v Newcomb,* 190 Mich App 424; 476 NW2d 749 (1991), on the basis of Administrative Order No. 1990-6, 436 Mich lxxxiv. Because *Newcomb* provides that third-party testimony regarding prior identification is not hearsay under MRE 801(d)(1) and thus is admissible within the discretion of the trial court, Judge MURPHY would agree that there was no abuse of discretion in allowing the testimony under the facts of this case.

determining that there was nothing unfair or biased about the identification procedure.

Even if we were convinced that this type of testimony should be inadmissible, admission in this case was not prejudicial because two very credible witnesses for the prosecution positively identified the defendant. It is not reasonably possible that in a trial free of the error complained of even one juror might have voted to acquit the defendant. *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972).

Defendant next argues that the prosecutor made improper remarks during closing argument that denigrated the defense and injected prejudicial and inflammatory material into the case. This issue, however, has not been preserved for our review because defendant did not object to the statements at trial. Absent an objection during trial, appellate review of improper prosecutorial closing arguments is precluded unless the prejudicial effect was so great that it could not have been cured by an appropriate instruction and failure to consider the issue would result in a miscarriage of justice. *People v Crawford,* 187 Mich App 344, 354; 467 NW2d 818 (1991).

In this case, although the prosecutor may have used colorful language during her closing argument, her remarks were not improper. Furthermore, any prejudice occasioned by the prosecutor's remarks could have been cured by an instruction.

Defendant further contends that he was denied a fair trial because the prosecution withheld during discovery evidence that would have contradicted testimony identifying defendant as the person who shot the victim. However, this issue was not properly preserved because it was not raised before and addressed by the trial court. *People v*

*Strunk,* 172 Mich App 208, 210; 431 NW2d 223 (1988).

Defendant's final argument, that the evidence is insufficient to support a conviction of first-degree murder, is also without merit. This Court reviews the sufficiency of evidence by examining it in the light most favorable to the prosecutor in order to determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979).

Our review of the record persuades us that the evidence was sufficient to sustain the defendant's conviction of first-degree murder. Multiple witnesses, who knew defendant for years in their neighborhood, identified him as one of two men who arrived at the scene just before the shooting. There was also evidence of hard feelings between the defendant and the victim. At least one witness testified that defendant had been carrying a gun. Four bullet holes were found in the driver's seat of the Jeep in which the victim was shot. In light of this evidence, we find that a rational trier of fact could have concluded that the evidence supported defendant's conviction of first-degree murder.

Affirmed.

MURPHY, P.J., concurred.

CONNOR, J. *(concurring).* I concur in the result reached only because Administrative Order No. 1990-6, 436 Mich lxxxiv, requires this Court to decide this case in accordance with *People v Newcomb,* 190 Mich App 424, 429-430; 476 NW2d 749 (1991). Were it not for the administrative order, I would reverse defendant's convictions and remand for a new trial.

I believe the statement of facts as contained in the majority opinion should be supplemented by the following material for clarification. Over defense objection, the court allowed police officer Marvin Butler to read a statement given by witness Carey Jackson following the shooting. In the statement, Jackson said he recognized defendant, whom he had known for seven or eight years, as one of the men getting out of the car and running toward the store and that defendant was carrying a pistol in his right hand. The court ruled this testimony admissible under MRE 613(b) as impeachment by extrinsic evidence. After the prosecution called another witness, Chaka Bell, who testified that he was outside the store and heard some shots but could not provide details, the trial court permitted police officer Dennis Richardson to read a statement taken from Bell. In the statement Bell said that he heard three shots and saw a man with a gun running down the street. The court again instructed the jury that the written statements by Bell and Jackson were admitted for impeachment only and were not substantive evidence. Sergeant Bivens was allowed to testify that Carey Jackson picked out two photographs of the men who got out of the car, and that Carey stated that the photograph depicting the defendant was a photograph of the man he saw carrying a gun. Sergeant Bivens' testimony was admitted under MRE 801(d) on the basis that it came within an exception to the hearsay rule. Attorney James Hall, who was present at the photographic lineup, testified that Carey Jackson identified the defendant as the man with the gun.

As part of her argument to the jury, the prosecutor compared the crime scene to "Dodge City" of the "wild, wild west" and described the defendant as the kind of person who causes everyone to

scatter when he approaches, and of whom "nobody knows anything."

The court, at the conclusion of the proofs, instructed the jury that the police officer's testimony concerning the prior inconsistent statements of the witnesses was for impeachment purposes only and

> [t]his evidence was permitted solely for the purpose of testing or judging the believability of the testimony which the witness did make here in court under oath.

At trial, witness Carey Jackson stated that he could not identify the perpetrator of the offense. He did not make an allegedly false identification; rather, he declined to identify anyone. It was not necessary to impeach the witness so that the jury could discount any negative statement he may have made or correct false impressions he may have created. Nor was a proper foundation provided to permit impeachment of witness Chaka Bell. In both instances, the alleged impeachment was merely a subterfuge to place the negative statements before the jury, and the prosecutor compounded the error by suggesting during final argument that the witnesses had recanted out of fear of retaliation. Given the nature of the testimony of four separate and presumably reliable witnesses—three police officers and a lawyer—the prejudicial effect could not be purged by a limiting instruction to the lay persons comprising the jury that the statements could be considered only for impeachment. It would be impossible for a juror to overlook the police officer's allegation of prior identification in a brutal slaying when the prosecutor suggests the person on trial is the kind of person who causes everyone to scatter when he

approaches, and of whom "nobody knows anything."

The majority opinion does not address the impeachment issue, but would affirm the trial court's decision to admit the third-party identification testimony under MRE 801(d)(1), holding that, because the declarant of the extrajudicial statement testified at trial and was subject to cross-examination, the statement is not hearsay.

There has been a longstanding split in this Court concerning whether MRE 801(d)(1) permits a third-party to testify about an out-of-court identification of a criminal defendant made by another witness. In *Newcomb, supra,* a panel of this Court decided that such third-party testimony was admissible.[1]

However, in *People v Sanford,* 402 Mich 460; 265 NW2d 1 (1978), five of the justices who had just enacted the rule of evidence expressed their opinion that it would not allow admission of third-party testimony of out-of-court identifications. *Id.* at 487, n 3, 499-500. Two justices thought the rule would allow admission of third-party testimony. *Id.* at 497. Thus, I conclude that MRE 801(d)(1) does

[1] This court has held such third-party testimony inadmissible twelve times, admissible nine times, and one time it declined to decide because any error would have been harmless. In no published case has a panel of this Court found admission of third-party testimony to require reversal. See *Newcomb, supra,* p 429, ns 1, 2; *People v Iehl,* 100 Mich App 277, 281-282; 299 NW2d 46 (1980); *People v Prophet,* 101 Mich App 618, 623-624; 300 NW2d 652 (1980); *People v Casey,* 102 Mich App 595, 604-605; 302 NW2d 248 (1980), reversal of lower court decision aff'd on other grounds 411 Mich 179; 305 NW2d 247 (1981); *People v Kramer,* 108 Mich App 240, 254-255; 310 NW2d 347 (1981); *People v Gwinn,* 111 Mich App 223, 244-246; 314 NW2d 562 (1981); *People v Khabar,* 126 Mich App 138; 337 NW2d 9 (1983); *People v Percy,* 127 Mich App 1, 4-5; 338 NW2d 398 (1983); *People v Jones,* 144 Mich App 1, 4-5; 373 NW2d 226 (1985); *People v Dixon,* 161 Mich App 388, 396; 411 NW2d 760 (1987); *People v Michael,* 181 Mich App 236, 241; 448 NW2d 786 (1989); *People v McCurdy,* 185 Mich App 503, 505; 462 NW2d 775 (1990).

not permit third-party testimony concerning out-of-court identifications by other witnesses.[2]

Because I cannot say with sufficient certainty that without the third-party testimony defendant would have been convicted, I would reverse defendant's convictions were it not for Administrative Order No. 1990-6.

---

[2] It is true that the language of the rule parallels FRE 801(d)(1)(C) and that federal courts permit the use of third-party testimony under the federal rule. See *United States v Anderson,* 406 F2d 719 (CA 4, 1969), and *United States v Jarrad,* 754 F2d 1451 (CA 9, 1985). Although the United States Supreme Court has not yet ruled with regard to the issue, *United States v Owens,* 484 US 554; 108 S Ct 838; 98 L Ed 2d 951 (1988), should leave little doubt that it would not have a problem with a third-party testifying under the rule. In *Owens,* the identifying witness could not make an in-court identification and, although he could not remember why he had done so, he testified that he had previously identified the defendant. The Court decided that even though the witness was unavailable under FRE 804(a) because of lack of memory, he was available for cross-examination under FRE 801(d)(1)(C) to testify about the previous identification. However, MRE 801 is a Michigan rule of evidence. While interpretation of its federal counterpart may be instructive in the absence of Michigan authority, the interpretation of the rule given by the Michigan Supreme Court is controlling and should have been followed.