PEOPLE v BRADY

Docket No. 57765. Submitted June 6, 1984, at Detroit.—Decided October 10, 1984.

On August 19, 1977, defendant, Larry Brady, was convicted by a jury in the Recorder's Court for the City of Detroit of second-degree murder and possession of a firearm during the commission of a felony. Defendant appealed and on November 26, 1979, the Court of Appeals affirmed the defendant's convictions in an unpublished per curiam opinion. Following the Supreme Court's denial of leave to appeal (409 Mich 945 [1980]), the Court of Appeals granted leave to consider new issues. The Court of Appeals then, in an unpublished per curiam opinion of May 6, 1982, affirmed the murder conviction a second time but reversed the felony-firearm conviction. Defendant then filed motions for resentencing and a new trial. A Recorder's Court judge granted the motion for resentencing. Defendant was then resentenced by Recorder's Court Judge Samuel C. Gardner and his motion for a new trial was denied. Defendant appealed in regard to such resentencing. After the resentencing, defendant filed in September, 1983, a delayed motion for a new trial in the Recorder's Court alleging that he had been improperly held on a "reverse writ" when he was originally identified in a lineup in 1977. This motion was denied on September 29, 1983. The defendant also challenges this "reverse writ" ruling pursuant to his claim of appeal from the resentencing. *Held:*

1. The defendant did not object to the "reverse writ" proceedings in his trial or in either of his prior appeals to the Court of Appeals. The determination that "reverse writ" proceedings are constitutionally improper was made by the Court of Appeals in another action on December 16, 1980, and affirmed by the Supreme Court on May 4, 1981.

2. This is an appropriate case for the application of the doctrine of finality. The end to defendant's right to raise new issues was reached before he raised the issue of the "reverse writ" by a delayed motion for a new trial in September of 1983.

The conviction for second-degree murder is affirmed.

REFERENCE FOR POINTS IN HEADNOTE
4 Am Jur 2d, Appeal and Error § 159 *et seq.*

CRIMINAL LAW — DOCTRINE OF FINALITY.

The Court of Appeals may determine that a case is an appropriate case for the application of the doctrine of finality and deny review of a defendant's claim raised for the first time in the defendant's third appeal to the Court of Appeals where the Court of Appeals has twice affirmed the defendant's conviction and the end to the defendant's right to raise new issues was reached before the defendant raised the new issue.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Andrea L. Solak,* Assistant Prosecuting Attorney, for the people.

*Robert E. Slameka,* for defendant on appeal.

Before: WAHLS, P.J., and T. M. BURNS and P. C. ELLIOTT,* JJ.

PER CURIAM. Defendant was convicted of second-degree murder in 1977. That conviction has been upheld in two previous appeals to this Court. We invoke the doctrine of finality and deny review of his newest claim which concerns evidence of a lineup at which he was identified and for which he was detained on a "reverse writ".

Defendant shot and killed Lowell Shonkwiler in a bar on January 11, 1977. He was arrested without a warrant and placed in a lineup, but was not identified by the witness who viewed the lineup. He was then taken before a Recorder's Court judge who issued a "reverse writ" allowing the police to detain him for a second lineup. At that lineup, he was identified.

On August 19, 1977, defendant was convicted of second-degree murder and possession of a firearm

---

* Circuit judge, sitting on the Court of Appeals by assignment.

during the commission of a felony (felony-firearm). After sentencing, he appealed.

## CHRONOLOGY OF POST-CONVICTION PROCEEDINGS

11-26-79 His convictions were affirmed by the Court of Appeals in an unpublished per curiam opinion (Docket No. 77-4139).

2-27-80 He filed a delayed application for leave to appeal to the Michigan Supreme Court.

4-18-80 A delayed motion for a new trial was denied in Recorder's Court.

11-20-80 The Michigan Supreme Court denied leave. 409 Mich 945.

12-12-80 The Court of Appeals granted leave to consider new issues.

4-22-82 A petition for a writ of habeas corpus was denied by a federal judge.

5-6-82 The Court of Appeals affirmed the murder conviction a second time in an unpublished per curiam opinion, but reversed the felony-firearm conviction (Docket No. 51376).

11-29-82 He filed a motion in Recorder's Court for resentencing and a delayed motion for a new trial on new grounds.

1-28-83 He supplemented the delayed motion for a new trial with an additional new ground.

2-18-83 A Recorder's Court judge granted the motion for resentencing because the felony-firearm conviction had been reversed.

4-18-83 He was resentenced by a different judge; the delayed motion for a new trial and any other motions were denied.

6-3-83 He filed a claim of appeal to the Court of Appeals from the resentencing.

9-23-83 He filed a delayed motion in Recorder's

Court for a new trial because he had been held on a "reverse writ". This motion was denied on September 29, 1983. He now challenges the "reverse writ" ruling pursuant to his claim of appeal from the resentencing.

## THE DOCTRINE OF FINALITY

At the time of the defendant's conviction, no one had challenged the validity of "reverse writ" proceedings. When this Court originally affirmed the defendant's conviction in an unpublished per curiam opinion on November 26, 1979, the Recorder's Court still conducted such proceedings. Moreover, defendant did not object to the proceedings in his trial nor did he raise this issue on his first appeal or on his second appeal. Not until *People v Casey,* 102 Mich App 595; 302 NW2d 248 (1980), *aff'd* 411 Mich 179; 305 NW2d 247 (1981), was it determined that "reverse writ" proceedings were constitutionally improper.

In a dissenting opinion in *People v Allensworth,* 401 Mich 67, 74; 257 NW2d 81, 84 (1977), Justice COLEMAN said:

"The question then becomes whether all persons who might have raised a similar issue can claim it, absent preservation, regardless of the period intervening between timely appeal and a subsequent decision of the Court in another unrelated case. Although there must be an exception to provide for fundamentals necessary to justice, the orderly process of law suggests a beginning and an ending."

Judge BRONSON expressed a similar view about restricting appellate review in his concurring opinion in *People v Tubbs,* 64 Mich App 341, 347-348; 236 NW2d 77 (1975):

"There is good reason for restricting repeated and unlimited availability of appellate review to a criminal defendant. He already has a constitutional right to appeal his conviction to this Court. If unsatisfied with our treatment of that appeal, he may request rehearing. GCR 1963, 819.4. He may also request Supreme Court review. GCR 1963, 853.

"In his appeal to this Court, he may raise any and all issues for our consideration. Indeed, he is well advised to do so, since, as we have repeatedly held, failure to raise, argue or brief an issue constitutes abandonment of that issue and precludes further consideration of it. * * *

* * *

"There should be but one opportunity to raise nonjurisdictional errors on appeal. That is the rule elsewhere. See *People v Marsh,* 14 Mich App 518, 524, fn 5; 165 NW2d 853 (1968), *rev'd on other grounds,* 383 Mich 495; 175 NW2d 780 (1970), 1 ALR 725. Otherwise, finality is never achieved. The appeal process becomes a battle of attrition, waged by a relentless prisoner with nothing to lose and everything to gain on an adversarial battlefield the conditions of which—through the mere passage of time—necessarily begin to take on an appearance very different from those prevailing at the time of trial. As the *Pickett* Court stressed *[People v Pickett,* 391 Mich 305, 308; 215 NW2d 695 (1974)]:

" 'Since a period of years may very well be involved, the problems of finding witnesses in our mobile society, the state of their memory, the availability of records and exhibits, etc., are very real and very significant.' " (Footnote omitted.)

Appellate judges must be mindful of the remarks of Justice Rehnquist in *McDonough Power Equipment, Inc v Greenwood,* — US —, —; 104 S Ct 845, 848; 78 L Ed 2d 663, 669 (1984):

"Trials are costly, not only for the parties, but also for the jurors performing their civic duty and for society which pays the judges and support personnel who

manage the trials. It seems doubtful that our judicial system would have the resources to provide litigants with perfect trials, were they possible, and still keep abreast of its constantly increasing case load."

Also, Chief Justice Warren E. Burger recently wrote:

"Few things have so plagued the administration of criminal justice, or contributed more to lowered public confidence in the courts, than the interminable appeals, the retrials and the lack of finality." *Evitts v Lucey,* 469 US —; 83 L Ed 2d 821, 836; 105 S Ct 830, 841.

We hold that this is an appropriate case for application of the doctrine of finality. Defendant's conviction has been affirmed twice. There has to be an end to a case. We hold that the end to defendant's right to raise new issues was reached before he raised the issue of the "reverse writ" by a delayed motion for a new trial in September of 1983.

We refuse to consider that issue and, again, affirm his conviction of second-degree murder.

Affirmed.