825 F.2d 410
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Lawrence EMANUEL, Petitioner-Appellant,
v.
Dale FOLTZ, Warden of the State Prison of South Michigan,
Respondent-Appellee.
 No. 86-1582
 United States Court of Appeals, Sixth Circuit.
 July 27, 1987.
 
 Before ENGEL and BOGGS, Circuit Judges, and HILLMAN, District Judge.*
 PER CURIAM.
 
 
 1
 Appellant, Lawrence Emanuel, petitioned the district court for a writ of habeas corpus asserting that his state convictions for arson and murder violated his constitutional rights because of prosecutorial misconduct, and denial of his sixth amendment rights to counsel and to confront witnesses against him.
 
 
 2
 We affirm the district court's denial of the writ.
 
 I.
 
 3
 Emanuel was charged, along with his girlfriend Taurus Duncan, with first degree murder and arson in the killing of a young woman with whom Duncan lived.[1] At Emanuel's trial, Duncan testified that Emanuel choked the victim to death while she watched. Emanuel's defense was that he drove Duncan to the scene of the crime, but waited in the automobile outside the house while she completed the crime.
 
 
 4
 After Emanuel learned that Duncan was wanted for the crimes and before he was arrested, he consulted Leonard Townsend, an attorney, with respect to his rights. A few days later, Emanuel went to the police to ask whether they 'could hang this one on him.'
 
 
 5
 A number of events in the examination and cross-examination of the witnesses at trial form the basis of Emanuel's claims that he was denied his constitutional rights. When Duncan took the stand on the first day of the trial to testify for the State, the prosecution examined her with respect to its theory of the case and many aspects of Emanuel's character. Duncan testified that she told Emanuel that the victim was her aunt, and that Tiffany, who was the victim's infant daughter, was Emanuel's child by Duncan whom the victim had adopted. The prosecutor hammered at Duncan's motivation for testifying, with repeated questions such as 'did I suggest that you tell anything but the truth in this trial?', 'Did I ever tell you that I could do something for you if you testified?' and the like. Near the end of this line of questioning, Duncan asserted that she testified because of threats to her family and defense counsel objected and moved to strike the testimony. The prosecutor then asked Duncan various questions about the nature of her involvement with Emanuel, including whether they had sexual relations and whether she aborted the fetus that she had conceived by Emanuel.
 
 
 6
 During direct examination, the prosecutor asked Duncan to point out a psychiatrist in the courtroom whom Duncan had visited at Plymouth State Mental Hospital. On cross-examination, defense counsel asked Duncan whether she told her psychiatrist after the slaying that she was having trouble sleeping or was thinking of committing suicide. Duncan answered these questions with the statement that '[m]y reason for even saying, you know, talk to the psychiatrist, I explained to him very clearly that it was because I was tired and I, you know, really didn't want to stay in the jail,' and the prosecutor objected, giving confidentiality and privilege as the reason. The court responded 'All right.'
 
 
 7
 Following the defense case, the prosecutor recalled Duncan and asked her to recount the in-court identification of the psychiatrist. He then asserted that defense counsel should not have asked Duncan about her visit to any psychiatrist. After finding on the record that Duncan did not waive her psychiatrist-patient privilege, the trial court advised her of her privilege not to testify with respect to the visit, and she exercised it with respect to her dealings with all psychiatrists. The judge excused the jury and Duncan and ruled that the physician-patient privilege compelled the court to prevent the defense from calling her psychotherapist as a witness, but did not subsequently, in the presence of the jury, instruct the jury to disregard any of her prior testimony regarding the visits to her psychotherapist.
 
 
 8
 The prosecution rested its case on the first day of the trial. Also on the first day, the defense presented its main case. The defense called character witnesses, and then Emanuel testified in his own behalf. Emanuel was asked about his character. On cross examination, the prosecutor probed Emanuel's character with questions about his marital status, reputation for peacefulness, and personal involvement in fighting, among other traits. Emanuel admitted to involvement in a number of fights, and he admitted that he was sexually involved with Duncan while he was married.
 
 
 9
 Also during cross-examination during the first day of the trial, the prosecutor asked Emanuel when he first consulted a lawyer. Emanuel replied that it was the day of his arrest. The prosecutor then asked him whether Emanuel concluded that his statement to the police on the day of his arrest was tantamount to a confession, after Emanuel had consulted with an attorney. The court sustained the defense counsel's objection to this question.
 
 
 10
 The following day on cross-examination, the prosecutor engaged in tactics that were intended to elicit the purpose of Emanuel's visit to the attorney before his arrest. The prosecutor asked Emanuel on direct examination whether he consulted with an attorney prior to going to the police to ask whether he was a suspect. Later, on recross examination, the prosecutor asked Emanuel to relate the conversation that he had with Leonard Townsend, the attorney, prior to going to the police to ask whether 'they could hang this one on him.' The court overruled the defense counsel's objection based on attorney-client privilege, because the court determined that the privilege had been waived.
 
 
 11
 After Emanuel finished his testimony, the attorney he consulted before his arrest, Leonard Townsend, testified for the State. When Townsend finished his testimony, the defense counsel objected to his being excused from the stand. Defense counsel wanted to elicit that Emanuel had contacted Townsend earlier about an adoption matter, but the trial court denied the request.
 
 
 12
 The trial judge did not instruct the jury to disregard any of the remarks or questions of the prosecutor, either during the cross-examination of Emanuel or the direct examination of Duncan.
 
 
 13
 At the conclusion of the trial, the jury found Emanuel guilty of first degree murder and arson. The judge sentenced Emanuel to a mandatory life sentence for the murder and thirteen to twenty years imprisonment for the arson.
 
 
 14
 On consideration of Emanuel's habeas corpus petition, the district court found that the prosecutor had only asked Emanuel about the circumstances of Emanuel's conversation with Townsend, and that the prosecutor's warning to Emanuel not to tell the jury of the visit further mitigated the possibility of any prejudice. In further support of the State's position, the district court determined that Emanuel voluntarily explained the content of the Townsend discussions on redirect.
 
 
 15
 The district court also found that Emanuel failed to object to most of the prosecutor's questions; and furthermore, that in all instances of the alleged misconduct, Emanuel failed to request limiting instructions or a mistrial. However, the district court found that the state courts relied upon this procedural ground in the dismissal of only one of the claims of prosecutorial misconduct, which was the claim pertaining to testimony about Emanuel's allegedly simultaneous sexual relations with his wife and girlfriend. The district court concluded that the state courts addressed the merits of the remainder of the objections, even though Emanuel raised them only in the second appeal in the state courts.
 
 
 16
 Finally, the district court decided that it could not consider whether it was error to allow the defense to recall Townsend to the stand to explain the circumstances of the prior contact with Emanuel in reference to an adoption matter, because it was a state law question.
 
 II.
 
 17
 In reviewing Emanuel's habeas corpus petition, the district court found that defense counsel had failed to specifically object to the only one of the prosecutor's comments that was not considered on its merits in Emanuel's second state court appeal. The State argues, and we agree, that the review of this particular alleged 'error' cannot be performed for the first time at the federal level because of the absence of 'cause' for the failure to object, and the absence of tangible 'prejudice' from the alleged error. Martin v. Foltz, 773 F. 2d 711 (6th Cir.), cert. denied 106 S.Ct. 3336 (1985).
 
 
 18
 The State objects to the district court's review of Emanuel's other due process claims on the merits. Emanuel failed to object in the trial court to the comments of the prosecutor and the State argues that it raised Emanuel's procedural default in the Michigan appellate courts. If the State were correct, Reed v. Ross, 468 U.S. 1 (1984), would require us to hold that Emanuel must demonstrate cause and prejudice for his failure to raise these claims on appeal according to the rule of the decisions in People v. Pauli, 138 Mich. App. 530 (1984) and People v. Brady, 139 Mich. App. 688 (1984). Nonetheless, the district court found that the rules of these Michigan decisions were not fully enforced at the time of Emanuel's conviction, and that the Michigan appellate courts did address the remainder of Emanuel's claims on the merits. Thus, federal courts may address them on habeas corpus review. County Court of Ulster County, New York v. Allen, 442 U.S. 140, 148-54 (1979); see also Butler v. Rose, 686 F. 2d 1163, 1168 (6th Cir. 1982).
 
 
 19
 In United States v. Leon, 534 F. 2d 667 (6th Cir. 1976), this court announced a general approach to the analysis of the effects of prosecutorial misconduct upon a defendant's right to a fair trial, including consideration of: (1) the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the competent proof introduced to establish the guilt of the accused. See also United States v. Wiley, 534 F. 2d 659, 661 (6th Cir. 1976). In Donnelly v. DeChristoforo, 416 U.S. 637 (1974), the Supreme Court ruled that the federal court's review of the prosecutor's comments to the jury relating to the respondent's offer to plead guilty to a lesser offense must be performed in the context of an 'examination of the entire proceedings in this case' for 'unfairness as to make the resulting conviction a denial of due process.' Donnelly, 416 U.S. at 643. Donnelly expressly invoked the supervisory power of federal courts.[2] 416 U.S. at 642.
 
 
 20
 In our case, both the state trial court and the district court found that the defense opened the door to these violations. The district court specifically found that it was Emanuel who first raised the subject of his consultation with an attorney, in direct testimony to his own character. Emanuel opened the door to the prosecutor's questions directed to recross examination regarding Emanuel's reasons for consulting Townsend, after Emanuel gave inconsistent answers to questions regarding the same matter on direct examination. The district court's findings are based upon findings of the state trial court, which are entitled to a presumption of correctness. Sumner v. Mata, 449 U.S. 539, 547 (1981). Furthermore, the state court found that the prosecutor's questions did not interfere with Emanuel's exercise of his sixth amendment right to counsel.
 
 
 21
 When Emanuel took the stand to testify in his own behalf, he opened the door to questions regarding all facets of his character and behavior. Fed. R. Evid. 405. The questions regarding his reputation for peacefulness and quiet, marital status and personal involvement in fighting, were clearly proper under the standard of the Federal Rules of Evidence. The questions to Duncan were proper because they were directed to Emanuel's motives for killing the victim, i.e. that he must have thought that he was the father of the victim's adopted child because of what Duncan told him. All of these questions of the prosecutor were focused and unambiguous. Caldwell v. Mississippi, 472 U.S. 320, 340 (1985). No limiting instruction was required to correct this conduct of the prosecutor, because no undue prejudice resulted to Emanuel.
 
 
 22
 The prosecutor's insinuation of the truth of Duncan's testimony, which arose out of his questions to Duncan implying that he always told her to tell the truth, may have involved error. Furthermore, his question to Emanuel directed to Emanuel's statement to the police on the day of his arrest and the confession that Emanuel may have felt that he made with the statement may also have involved error, but the conduct of the prosecutor in making either statement did not rise to the level of constitutional error in the context of the whole trial. Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).
 
 
 23
 Finally, the testimony against Emanuel with respect to guilt was strong and included Duncan's eyewitness testimony to the slaying.[3] Therefore, based upon the four factors in Leon, we agree that the district court properly denied the writ of habeas corpus.
 
 
 24
 The denial of the writ is AFFIRMED.
 
 
 
 *
 The Honorable Douglas Hillman, Chief Judge of the United States District Court for the Western District of Michigan, sitting by designation
 
 
 [1]
 The prosecutor reduced Duncan's charges to second degree murder and dropped the arson charge in exchange for a plea of guilty to second degree murder and an agreement to testify for the State against Emanuel
 
 
 [2]
 There is language in the court's decision in United States v. Wiley, 534 F. 2d 659, 661 (6th Cir. 1976) that suggests that our scope of review of prosecutorial misconduct is broader in direct appeals than in habeas corpus. See also United States v. Smith, 500 F. 2d 293, 297 (6th Cir. 1974) (comparison of harmless error standards). We need not decide which standard properly applies to this case, because even assuming that the standards are different and the Wiley standard applies, petitioner has not demonstrated the merits of his petition
 
 
 [3]
 Emanuel's other contentions that the judge abused his discretion by failing to recall Townsend to the stand for further cross-examination and that Duncan's exercise of the psychotherapist-patient privilege was improper are also without merit in the context of the whole trial