PEOPLE v THOMAS

Docket No. 111910. Submitted June 12, 1991, at Detroit. Decided
    October 21, 1991, at 9:25 A.M. Leave to appeal sought.
    Joseph Thomas was charged in the Recorder's Court for the City
    of Detroit with two counts of first-degree felony murder. He
    pleaded guilty of two counts of second-degree murder and was
    sentenced to forty to one hundred years in prison for each
    conviction. After exhausting all of his state appellate remedies
    and an unsuccessful attempt to withdraw his guilty plea in the
    trial court, the defendant successfully petitioned the federal
    district court for a writ of habeas corpus, resulting in the
    withdrawal of his guilty plea and a jury trial on the original
    two counts of first-degree felony murder. A jury found the
    defendant guilty of both counts, and the court, James E.
    Roberts, J., sentenced him to life in prison. He appealed,
    alleging that his arrest was unlawful and that certain physical
    evidence seized and statements he made following his arrest
    should have been suppressed. He also alleged that the prose-
    cutor lacked the authority to try him on the first-degree mur-
    der charges in light of his earlier pleas of guilty of second-
    degree murder.

    The Court of Appeals *held:*

    1. The trial court clearly erred in finding that the police had
    probable cause to arrest the defendant at his residence without
    a warrant. However, the evidence developed by the police
    following and independent of his illegal arrest provided proba-
    ble cause to have the defendant arrested subsequently, and a
    search conducted then would have yielded the physical evi-
    dence obtained. Therefore, the inevitable discovery doctrine can
    be applied to justify the admission of the physical evidence
    seized during and after the defendant's arrest.

    2. Even though the defendant would have been arrested

REFERENCES

Am Jur 2d, Arrest §§ 44-49; Criminal Law §§ 501-505, 785; Evidence
    § 416.5.
Retrial on greater offense following reversal of plea-based convic-
    tion of lesser offense. 14 ALR4th 970.
What constitutes probable cause for arrest —Supreme Court cases.
    28 L Ed 2d 978.

eventually, it was not shown that he would have made the same statements to the police that he made following his unlawful arrest. Therefore, the inevitable discovery doctrine does not apply to justify the admission of evidence of the statements, and the trial court clearly erred in failing to suppress that evidence. The defendant is entitled to a new trial.

3. The defendant was properly tried for first-degree murder. Although a rule adopted by the Supreme Court in 1973 that a defendant who pleaded guilty of a lesser-included offense and later had the plea set aside could not be tried for a greater offense was in effect at the time the defendant tendered his original guilty plea, the rule was abandoned before he obtained habeas corpus relief and was tried for the first-degree murder charges. The rule was abandoned when the Court enacted GCR 1963, 785.7(7)(d), now MCR 6.312, which provides that if a defendant elects to withdraw a plea, the case may proceed to trial on any charges that had been brought or could have been brought against the defendant if the plea had not been entered.

Reversed and remanded.

1. ARREST — SEARCHES AND SEIZURES — PROBABLE CAUSE — INFORMANTS.

To establish probable cause to arrest on the basis of information supplied by an informant, there must be sufficient facts to permit an independent determination that the person supplying the information is reliable and that the information is based on something more substantial than casual rumor.

2. EVIDENCE — EXCLUSIONARY RULE — INEVITABLE DISCOVERY DOCTRINE — PHYSICAL EVIDENCE.

Physical evidence obtained as a result of a defendant's unlawful arrest may be admitted where the prosecution shows that the same evidence inevitably would have been discovered despite the unlawful police conduct.

3. EVIDENCE — EXCLUSIONARY RULE — INEVITABLE DISCOVERY DOCTRINE — STATEMENTS.

The inevitable discovery doctrine ordinarily cannot be applied to justify the admission into evidence of a tainted confession or incriminating statements a defendant made to the police following an unlawful arrest.

4. CRIMINAL LAW — GUILTY PLEAS — WITHDRAWAL OF PLEA — TRIAL.

If a defendant elects to withdraw a plea, the case may proceed to trial on any charges that had been brought or could have been brought against the defendant if the plea had not been entered (MCR 6.312).

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Jeffrey Caminsky,* Assistant Prosecuting Attorney, for the people.

*Robert M. Morgan* and Joseph Thomas, in propria persona, for the defendant on appeal.

Before: Gillis, P.J., and Sawyer and Reilly, JJ.

Per Curiam. Defendant was convicted, following a jury trial, of two counts of first-degree felony murder. MCL 750.316; MSA 28.548. He was sentenced to serve life in prison. He now appeals and we reverse.

The murders that gave rise to defendant's convictions occurred on December 6, 1974. Defendant was charged in those murders shortly after their commission, pleaded guilty of two counts of second-degree murder on March 12, 1975, and was sentenced to serve forty to one hundred years in prison for each conviction. Following various unsuccessful appeals to this Court and the Supreme Court and an attempt to withdraw his guilty plea in the trial court, defendant was able to obtain habeas corpus relief in 1987, resulting in the withdrawal of his guilty plea and his trial on the current charges. A trial was conducted in July 1988, resulting in defendant's present convictions.

Defendant raises a number of issues on appeal, one of which is dispositive. Defendant argues that his initial arrest was unlawful and, therefore, certain physical evidence seized following his arrest as well as statements made by defendant to the police following his arrest should have been suppressed. We agree that defendant was arrested

unlawfully and that the statements made by him to the police following that arrest should have been suppressed, but do not agree with defendant that the physical evidence should have been suppressed.

The police arrested defendant at his residence without a warrant. Defendant argues that the police lacked probable cause to make an arrest. We agree. A police officer may arrest without a warrant if he has reasonable (or probable) cause to believe that a felony has been committed and that the suspect committed the felony. MCL 764.15; MSA 28.874. Probable cause to arrest exists if the facts available to the officer at the moment of arrest would justify a fair-minded person of average intelligence to believe that the suspected person has committed a felony. *People v Oliver,* 417 Mich 366, 374; 338 NW2d 167 (1983). The only facts known to the police at the time of defendant's arrest concerning defendant's involvement in the murders were that an unnamed street source of one of the officers had said that the "word on the street" was that an individual named "Hassen" living on the same street as defendant was involved in the murders, that defendant's middle name is Hassen, and that defendant was wanted for questioning in the case because of his known association with two other suspects in the murders, General Dorsey and Jeffrey Dorsey (a neighbor of the victims).[1]

This evidence does not establish probable cause to make an arrest. The mere fact that defendant is a known associate of two suspects in the killings, while perhaps grounds to make defendant also a suspect, does little to establish defendant's involvement in the murders. Further, the fact that an

---

[1] A search of Jeffrey Dorsey's home earlier on the day of defendant's arrest had revealed property missing from the victims' home.

unidentified informant told an officer that the "word on the street" was that an individual with the same name as defendant's middle name was involved in the crime also fails to establish probable cause. First, the officer declined to identify his source and did little to establish the source's credibility other than pointing out that the source was not in custody at the time of supplying the information, and there was no evidence to corroborate the accuracy of the source's information. Indeed, the officer's testimony was that the source told him that the "word on the street" was that a person by the name of Hassen who lived on the same street as defendant was involved in the murders. There is no indication that the source spoke from personal knowledge that Hassen was involved in the murders. Rather, the source merely indicated that he had heard that Hassen was involved. The individuals from whom the source got his information apparently were not even identified to the police officer, let alone identified in court.

Rumor and a known association with other suspects in a case, while certainly justifying investigation by the police into an individual's involvement in a crime, do not establish probable cause to believe that the person was involved in the commission of the offense. See *Oliver, supra* at 374 (to establish probable cause based upon information supplied by an informant, there must be sufficient facts to permit an independent determination that the person supplying the information is reliable and that the information is based on something more substantial than casual rumor). Accordingly, we conclude that the trial court clearly erred in finding that probable cause existed to arrest defendant.

The prosecutor also appears to argue that the

statements made by defendant following his arrest as well as the physical evidence recovered in connection with defendant's arrest are admissible under the inevitable discovery exception to the exclusionary rule.[2] Although the evidence obtained as a result of defendant's unlawful arrest normally would be suppressed under the fruit of the poisonous tree doctrine, it nevertheless may be admissible if the prosecution can show that the same evidence inevitably would have been discovered despite the unlawful police conduct that results in the application of the exclusionary rule. *Nix v Williams*, 467 US 433; 104 S Ct 2501; 81 L Ed 2d 377 (1984).

*Nix* represents the second time that that case was before the Supreme Court. In an earlier opinion in the case, *Brewer v Williams*, 430 US 387; 97 S Ct 1232; 51 L Ed 2d 424 (1977), the Supreme Court granted Williams a new trial, concluding that his right to counsel had been violated. In *Brewer*, a ten-year-old girl had been murdered and Williams had been arrested for that murder before discovery of the body. While transporting Williams from the place of arrest back to Des Moines, where the abduction had occurred, one of the officers gave Williams what has become known as the "Christian burial speech." The officer pointed out to Williams that a snowstorm was coming that would make it impossible to find the body and that the parents of the victim should be entitled to a Christian burial for their daughter, who had been abducted on Christmas Eve and murdered. As a result of the speech, Williams directed the officers

[2] The prosecutor's brief contains exactly one sentence regarding this issue, asserting that defendant's arrest was inevitable. Additionally, the trial court in ruling on this issue did note that "it [the arrest] would have been done anyhow." While we address this issue, appellate review certainly was not enhanced by the prosecutor's failure to develop more fully his argument in this area.

to the body. Having concluded that the conduct of the officers violated Williams' right to counsel, the Supreme Court concluded that incriminating statements themselves, as well as any testimony by the police concerning the fact that Williams had led them to the body, could not be admitted into evidence.

The Court, however, left open the question whether evidence of where the body was found as well as the condition of the body could be admitted on the theory that the body would have been discovered anyway. *Id.* at 406, n 12. On retrial, the state trial court found that the body inevitably would have been discovered and allowed the evidence of the discovery of the body and the condition of the body at trial. Ultimately, the United States Supreme Court concurred in this conclusion in *Nix,* concluding that the body inevitably would have been discovered because an intensive search for the body had been in progress approximately 2½ miles from where the body was found and had been proceeding to the area where the body was located.

In the case at bar, the prosecutor suggests, and the trial court concluded, that defendant inevitably would have been arrested on the basis of evidence that was developed by the police following defendant's arrest and independent of the arrest. Specifically, the police obtained statements from witnesses that placed defendant in the area of the homicides before the homicides, and fingerprint analysis of latent prints recovered from property stolen from the victims' house matched defendant's fingerprints on a fingerprint card the police had from a prior arrest of defendant. We agree that this evidence, combined with the knowledge the police already had concerning defendant's known involvement with the Dorsey brothers and

the information obtained by the street informant, would have yielded probable cause to arrest defendant at a subsequent time. Similarly, we are satisfied that a search would have been conducted at that subsequent time that would have yielded the physical evidence obtained. Accordingly, the inevitable discovery doctrine can be applied to justify the admission into evidence of the physical evidence seized during and after defendant's arrest. To this extent, the trial court's decision was not clearly erroneous. *People v Martinez,* 187 Mich App 160, 171; 466 NW2d 380 (1991).

This, however, does not resolve the question whether evidence of defendant's statements to the police should have been suppressed. The prosecutor cites no case in which the inevitable discovery doctrine has been applied to a defendant's statements.[3] On the other hand, defendant has cited no case in which the application of the inevitable discovery doctrine to statements has been considered. Our own research of the issue has not revealed any Michigan cases that have addressed this issue, and few cases from foreign jurisdictions as well. The only case that we have discovered that squarely addresses the issue is *Unger v State,* 640 P2d 151 (Alas App, 1982). In *Unger,* the Alaska Court of Appeals noted that "a confession cannot normally be considered the type of evidence that inevitably will be 'discovered' by legal, predictable police procedures." *Id.* at 159. Indeed, the Alaska court noted that the inevitable discovery doctrine permits the state to introduce evidence that is the result of an illegal search or seizure upon a showing that the government undoubtedly would have discovered the tainted evi-

---

[3] In fact, the only inevitable discovery case cited by the prosecutor is *Nix, supra,* which, of course, concerned the inevitable discovery of physical evidence.

dence by lawful means, citing Kamisar, LaFave & Israel, Modern Criminal Procedure (4th ed, 1974), p 702. *Unger, supra* at 158.

Also of interest is *State v McKendall,* 36 Or App 187; 584 P2d 316 (1978), which was relied upon in part by the *Unger* court, wherein the Oregon Court of Appeals declined to apply the inevitable discovery doctrine to the admission of a confession. Although the court did not explicitly state that the inevitable discovery doctrine does not apply to confessions, the court did note that there was nothing in the record to support a finding that the defendant's statement inevitably would have been made and, therefore, the exception did not apply. *Id.* at 193. Similarly, in *State v Anderson,* 160 Wis App 2d 307; 466 NW2d 201 (1991), the Wisconsin Court of Appeals rejected the application of the inevitable discovery doctrine to find a confession admissible, but did so on the basis that the facts did not support a finding of inevitable discovery without directly considering the question whether the inevitable discovery doctrine applies to confessions. This was also the result in an earlier Oregon Court of Appeals decision, *State v Paz,* 31 Or App 851; 572 P2d 1036 (1977), in which the court concluded that the defendant's statements would not have been inevitably discovered and, therefore, should not have been admitted. The court did not, however, address the threshold question whether the inevitable discovery doctrine is applicable to confessions or other statements by a defendant.

We agree with the Alaska court that the inevitable discovery doctrine ordinarily cannot be applied to justify the admission into evidence of a tainted confession. Even though it can be shown that defendant eventually would have been arrested, that does not lead to the conclusion that it was inevitable, without speculation, that defendant

would have made the same statements to the police that he did in fact make following his unlawful arrest. It is simply too speculative to conclude that, following the passage of some time, defendant necessarily would have made the same statements to the police that he made initially. Defendant could have learned of the arrest of the Dorsey brothers and, with time to reflect, could have consulted counsel who would have advised him to remain silent; defendant on his own could have considered the possibility of being arrested and the need to remain silent; and, for that matter, the manner in which the arrest was conducted could affect defendant's willingness to make a statement. See *Unger, supra* at 159. To conclude that a person would make the same statement under different circumstances requires, in essence, both the ability to read the defendant's mind to ascertain why he was willing to make the statement in the first place and a degree of prognostication concerning whether that willingness would extend to different circumstances, which ordinarily would be beyond the power of either the prosecutor or the court to perform.

We stop short, however, of saying that the inevitable discovery doctrine can never be applied to justify the admission of a statement by a defendant because we allow for the possibility that some fact situation could arise in which it would be appropriate to apply the doctrine.[4] However, it would seem that such cases would be rather unu-

---

[4] For example, had, unknown to the arresting officers, another officer in the department obtained a warrant for defendant's arrest and arrived at defendant's residence moments after the arrest was conducted without a warrant, it might be valid to conclude that there is no reasonable distinction between the arrest without a warrant and an arrest a few moments later with the warrant and, therefore, any statements made by defendant after the arrival of the warrant would be admissible. Obviously, this is a rather unique fact situation and certainly is not the case presented here.

sual and would involve unique circumstances. In any event, the prosecutor has made no showing in this case that there is any reason to believe that defendant inevitably would have made the same statements following a subsequent lawful arrest made sometime after the unlawful arrest in the case at bar. Accordingly, we conclude that the trial court clearly erred in failing to suppress from evidence statements made by defendant following his arrest.[5]

For these reasons, we conclude that the trial court erred in denying the suppression of evidence of defendant's statements. Therefore, defendant is entitled to a new trial.[6]

---

[5] We do note that this does not preclude the proof of the facts contained within the statement from sources other than the statement itself. See *McKendall, supra* at 193. Indeed, this is the result obtained in *Brewer* and *Nix,* with evidence of the statements by Williams being suppressed, but the content of those statements, the location of the victim's body, being admissible through other evidence.

[6] We briefly consider the prosecutor's argument that defendant has waived consideration of this issue by not having raised it at the time of his original plea. The prosecutor's argument in this regard is wholly without merit. The case primarily relied upon by the prosecutor in support of this argument, *People v Brady,* 139 Mich App 688; 363 NW2d 8 (1984), is simply not on point. In *Brady,* the defendant brought a series of appeals and motions for new trial from the same conviction, raising his issues piecemeal rather than in the same proceeding. In the case at bar, this matter is before us on defendant's direct appeal from his conviction. Moreover, the issue of the lawfulness of defendant's arrest did not arise at a prior trial inasmuch as no prior trial had been conducted, because defendant's prior conviction was obtained by plea. The other cases cited by the prosecutor in support of this argument are similarly not on point. They involve the requirement that an objection be made at trial in order to preserve an issue for appeal and the law-of-the-case doctrine, neither of which is applicable in this case. Defendant did preserve at trial the issue regarding the lawfulness of his arrest, and the law-of-the-case doctrine is inapplicable inasmuch as this Court has not previously ruled regarding the issues of the lawfulness of defendant's arrest or the need to suppress evidence derived from that unlawful arrest. The prosecutor's position might have had some merit had defendant's prior conviction followed a trial and had defendant taken an appeal from that conviction and not challenged the lawfulness of his arrest or the admission of the evidence obtained from that arrest. In such a circumstance, it might be appropriate to conclude that defendant

One other issue raised by defendant merits brief consideration because it affects the question whether a new trial is appropriate. Defendant argues that the prosecutor lacked the authority to try defendant on the first-degree murder charge in light of his earlier plea of guilty of second-degree murder. Defendant is correct that the Supreme Court in 1973 adopted a rule that a defendant who pleaded guilty of a lesser-included offense and later had the plea set aside could not be tried for a greater offense than that to which he had pleaded. *People v McMiller,* 389 Mich 425; 208 NW2d 451 (1973). The *McMiller* rule was reaffirmed by the Court in *People v Thornton,* 403 Mich 389; 269 NW2d 192 (1978). However, the Supreme Court abandoned the *McMiller* rule by its adoption of GCR 1963, 785.7(7)(d), effective March 1, 1984, which provided that if a defendant elects to withdraw a plea, the case may proceed to trial on any charges that had been brought or could have been brought against the defendant if the plea had not been entered. See 418 Mich lxxxvi. That provision may now be found in MCR 6.312, the staff note to which recognizes that the court rule removes the prohibitions established by *McMiller* and *Thornton.* Mich Ct R, p R 6.3-7. Although the *McMiller* rule was in effect at the time defendant tendered his original guilty plea, it had been abandoned before defendant obtained habeas corpus relief and was tried for the first-degree murder charges. Accordingly, we conclude that defendant was subject to a trial for the higher charge, the *McMiller* rule no longer being applicable.

Defendant also raises two issues in a supplemental brief filed in propria persona. In light of our

waived the issue in further proceedings regarding the case if a reversal had been obtained on other grounds. See, e.g., *VanderWall v Midkiff,* 186 Mich App 191; 463 NW2d 219 (1990).

resolution of the first issue, we need not consider the issues raised in that brief.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.