PEOPLE v CHAMPION

Docket No. 132469. Submitted September 15, 1993, at Lansing. Decided June 20, 1994, at 9:00 A.M. Leave to appeal sought.

Kenneth R. Champion was convicted by a jury in the Saginaw Circuit Court, Leopold P. Borrello, J., of possession of less than twenty-five grams of cocaine. He then pleaded guilty of being a fourth-felony offender, and was sentenced to five to fifteen years in prison. He appealed, alleging error in the denial of his motion to suppress evidence of cocaine found in a pill bottle inside his sweatpants and in the false bottom of a can found in his automobile.

The Court of Appeals *held:*

1. The investigative *Terry* (*Terry v Ohio,* 392 US 1 [1968]) stop of the defendant by the police was reasonable under the totality of the circumstances. The defendant's behavior created a reasonable, articulable suspicion that the defendant had been, was, or was about to be engaged in a criminal activity that permitted the police to stop the defendant and investigate. Therefore, a patdown search for weapons was permitted. However, the police did not have probable cause to arrest the defendant and, therefore, were not entitled to engage in a search as sweeping as that permitted incident to a valid arrest.

2. Under the circumstances of this case, although an investigative stop of the defendant was permissible, the officers exceeded the scope of a *Terry* patdown search.

3. Police officers may seize nonthreatening contraband detected during a protective patdown permitted by *Terry,* but the search must stay within the bounds permitted by *Terry.* This "plain feel" exception to the warrant requirement provides that if a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity

REFERENCES

Am Jur 2d, Searches and Seizures §§ 51, 70, 191, 200.

Law enforcement officer's authority, under Federal Constitution's Fourth Amendment, to stop and briefly detain, and to conduct limited protective search of or "frisk," for investigative purposes, person suspected of criminal activity—Supreme Court cases. 104 L Ed 2d 1046.

immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons. Therefore, where it is immediately apparent that the object is contraband, it may be seized without a warrant. If the police lack probable cause to believe that the object is contraband without conducting a further search of the object, i.e., if its incriminating character is not readily apparent, then its seizure without a warrant is not justified.

4. Here, the incriminating nature of the pill bottle was not immediately apparent. The officer could not determine that the bottle contained cocaine without taking it from the defendant and visually inspecting it. The visual inspection exceeded the plain feel exception. Therefore, the trial court erred in failing to suppress evidence of the cocaine found on the defendant.

5. Because the police lacked probable cause to arrest the defendant, they did not have the authority to impound his car and inventory its contents. Therefore, the trial court erred in failing to suppress evidence of the cocaine found in the car.

Reversed.

1. SEARCHES AND SEIZURES — INVESTIGATIVE STOPS.

When a police officer observes behavior that under the totality of the circumstances yields a particularized suspicion that leads the officer to conclude that a person has engaged, is engaged, or is about to engage in criminal activity, the officer may stop the person and make reasonable inquiries regarding the officer's suspicion; the officer may search the suspect, but the search must be limited to that which is necessary for the discovery of weapons that might be used to harm the officer or others nearby.

2. SEARCHES AND SEIZURES — INVESTIGATIVE STOPS — IMMEDIATELY IDENTIFIABLE CONTRABAND.

Police officers may seize nonthreatening, immediately identifiable contraband detected during a protective patdown of a person incident to a proper investigative stop; however, where there is not probable cause to believe that the object is contraband without conducting some further search of the object, i.e., where its incriminating character is not immediately apparent, its seizure without a warrant is not justified.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Michael D. Thomas,* Prosecuting Attorney, and *Edwin R. Brown,* Assistant Prosecuting Attorney, for the people.

*Daniel D. Bremer,* for the defendant on appeal.

Before: McDonald, P.J., and Sawyer and Marilyn Kelly, JJ.

Marilyn Kelly, J. Defendant appeals as of right from his convictions for possession of less than twenty-five grams of cocaine and as a habitual fourth felony offender. MCL 333.7403(2)(a)(v); MSA 14.15(7403)(2)(a)(v); MCL 769.12; MSA 28.1084. The judge sentenced him to five to fifteen years in prison. His sentence was made consecutive to one he was then serving for a different offense. On appeal, defendant argues error in the denial of his motion to suppress cocaine which he claims was improperly seized. He also urges that his sentence was disproportionate under *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990). We reverse.

I

Two Saginaw police officers, driving through a high crime and drug area of the city, saw a man standing alone on a street corner. The officer driving the car was a twenty year veteran. His partner had been on the force for approximately six months. Upon spotting the squad car, the man turned and ran down a side block. One of the officers later testified he believed the man shouted a warning to someone. The officers chased the man. On turning the corner, they saw two men running in the opposite direction and a third, defendant, walking or running from a car parked mid-block. He held his hands in the inside front of his sweatpants.

The officers detained him. One of the officers recognized defendant from previous weapons and drug arrests and knew he had a prison record. Defendant did not remove his hands from his

pants despite repeated instructions to do so. Fearing that defendant had a weapon, the officers performed a pat-down. One of the officers found a pill bottle in his groin area. The officer removed the bottle and, examining it, saw that it contained cocaine.

The officers arrested defendant for possession and performed an inventory search of the car. There, they found cocaine in the false bottom of a can of Fix-a-Flat.

Defendant twice moved to suppress the physical evidence, claiming that it had been improperly seized. Each time, based on the totality of the circumstances, the court concluded that the stop and search had been valid and the challenged evidence was admissible. However, at the second suppression hearing, which occurred at mid-trial, the judge found, contrary to his original opinion, that the veteran officer's chronicle of the stop was not credible. Rather, he found credible the considerably different version given by the rookie officer. Based on the rookie officer's testimony, the judge ruled that defendant had been seized the moment the officers got out of their car. They had ordered defendant to stop and had begun running after him. A reasonable person would not have believed himself free to leave at that point.

A jury convicted defendant of possession of less than 25 grams of cocaine. He then pled guilty as a habitual fourth offender and was sentenced.

II

Two issues must be resolved by our Court. First, whether this was an investigative stop or an arrest. Second, whether the scope of the search was proper. It should be noted that admissibility of the

cocaine depends on whether the police exceeded their authority to search, given the circumstances.

The Fourth Amendment of the United States Constitution and its Michigan counterpart guarantee the right of people to be secure against unreasonable searches and seizures. The right is subject to a few specifically established and well defined exceptions. US Const, Am IV; Const 1963, art 1, § 11; *Thompson v Louisiana,* 469 US 17, 19-20; 105 S Ct 409; 83 L Ed 2d 246 (1984). One arises when a police officer observes behavior which leads him to conclude that a party has engaged, or is about to engage, in criminal activity. Then, the officer is permitted to stop the party and make reasonable inquiries regarding his suspicion. *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

A constitutionally proper investigative stop must satisfy a two part test. *United States v Cortez,* 449 US 411; 101 S Ct 690; 66 L Ed 2d 621 (1981). The totality of the circumstances must yield a particularized suspicion that the individual being investigated has been, is or is about to be, engaged in criminal activity. The totality is that as understood by a law enforcement officer. *Id.,* 418. The suspicion must be reasonable and articulable. *Terry,* 21.

While an investigative stop may be valid under many circumstances, the scope of the search of the suspect's person incident to a *Terry* stop is strictly limited. The limitation is "to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." *Terry,* 26.

In contrast to an investigative stop which requires a reasonable articulable suspicion that criminal activity is afoot, an arrest may take place solely where there is probable cause:

"This Court repeatedly has explained that 'probable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." [*People v Shabaz,* 424 Mich 42, 58; 378 NW2d 451 (1985), quoting *Michigan v DeFillippo,* 443 US 31, 37; 99 S Ct 2627; 61 L Ed 2d 343 (1979).]

We are persuaded that an investigative *Terry* stop was reasonable under the totality of the circumstances here. Particularized suspicion arose as a result of the following factors: (1) the area was a known drug crime area, (2) a man, seeing a marked police car, ran from sight around a corner, (3) as officers turned the corner, two men got out of a car parked midblock, (4) the passenger and the man at the corner ran away, (5) the driver made some movement away from the car, (6) he was known by the police to have previous drug and weapons convictions, (7) he held his hands inside the front of his sweatpants and (8) he refused several police orders to remove his hands from his sweatpants.

Defendant's behavior created a reasonable, articulable suspicion to permit a police officer to stop and investigate. Consequently, a patdown search for weapons was also permitted. See also *Minnesota v Dickerson,* 508 US —; 113 S Ct 2130; 124 L Ed 2d 334 (1993); *People v Nelson,* 443 Mich 626, 639; 505 NW2d 266 (1993).

However, despite the prosecutor's arguments to the contrary, we are not persuaded that the police had probable cause to arrest defendant. We acknowledge that the arrest occurred in a known drug crime area and that the parties had fled from a parked car upon seeing police officers in a marked car. We recognize, as well, that the police

officers knew defendant. But we do not believe that defendant's conduct created probable cause to arrest.

> Probable cause to arrest exists if the facts available to the officer at the moment of arrest would justify a fair-minded person of average intelligence to believe that the suspected person has committed a felony. [*People v Thomas,* 191 Mich App 576, 579; 478 NW2d 712 (1991), citing *People v Oliver,* 417 Mich 366, 374; 338 NW2d 167 (1983).]

In *Nelson* the police had observed defendants spend four minutes in a known drug house and had witnessed a controlled drug buy there a short time earlier. They had heard a person from the house comment that a runner had been sent to get more drugs for distribution. Even so, they did no more than conduct a *Terry* stop of defendants' vehicle.

Here, the prosecution cannot persuasively argue that the officers had anything more than a similar reasonable and articulable suspicion. The occupants of the car were not at a known drug sales location. They were not under surveillance. There was no controlled drug buy or conversation with an informant. The men had been observed at most for several seconds rather than minutes before the police detained defendant.

### III

Since the stop here was merely a valid *Terry* stop, the police were not entitled to engage in a search as sweeping as that permitted incident to a valid arrest. The scope and validity of the search the officers conducted must be measured against a valid *Terry* patdown.

The United States Supreme Court recently con-

cluded that police officers may seize nonthreaten-
ing contraband detected during a protective pat-
down permitted by *Terry*; however, the search
must stay within the bounds permitted by *Terry*.
*Minnesota v Dickerson,* 508 US —, —; 124 L Ed 2d
344. The Court clearly articulated what quickly
became known as the "plain feel" exception to the
warrant requirement, something analogous to the
"plain view" exception. It is defined in *Dickerson:*

> If a police officer lawfully pats down a suspect's
> outer clothing and feels an object whose contour or
> mass makes its identity immediately apparent,
> there has been no invasion of the suspect's privacy
> beyond that already authorized by the officer's
> search for weapons; if the object is contraband, its
> warrantless seizure would be justified by the same
> practical considerations that inhere in the plain
> view context. [*Id.,* 508 US —; 124 L Ed 2d 346.]

This is the first time our appellate Court has
been requested to apply the "plain feel" exception
to the warrant requirement. We conclude that,
under the circumstances of this case, while an
investigative stop was permissible, the officers ex-
ceeded the scope of a *Terry* patdown. The "plain
feel" exception developed in *Dickerson* cannot save
the drugs seized during the patdown.

In *Dickerson,* a police officer patted down a
suspect and ascertained that he had no weapon. In
the process, he touched a rocklike object inside the
suspect's pocket and suspected it to be cocaine. In
order to make a further determination about the
object, the officer examined it with his fingers. As
it slid, he felt it to be a lump of crack cocaine
packaged in cellophane.

The U.S. Supreme Court acknowledged that im-
mediately identifiable contraband may be seized
under the "plain feel" exception. However, because

the officer had to manipulate the unseen object to conclude that it was cocaine, his search exceeded both the bounds of *Terry* and the "plain feel" exception. *Dickerson,* 508 US —; 124 L Ed 2d 347.

Similarly, in this case, the officer who searched defendant testified that he felt a pill bottle in defendant's groin. He claimed that he recognized this as a method by which cocaine was transported. However, in order to make the determination that this particular pill bottle contained cocaine, he had to remove it from defendant's person and visually inspect it.

We are struck by a distinction the *Dickerson* Court drew in discussing the "plain view" exception which seems particularly relevant here:

> Under that doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. See *Horton v California,* 496 US 128, 136-137 [110 S Ct 2301; 110 L Ed 2d 112] (1990); *Texas v Brown,* 460 US 730, 739 [103 S Ct 1535; 75 L Ed 2d 502] (1983) (plurality opinion). If, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object—i.e., if "its incriminating character [is not] 'immediately apparent,'" *Horton, supra,* at 136 [110 S Ct 2308; 110 L Ed 2d 123]—the plain-view doctrine cannot justify its seizure. *Arizona v Hicks,* 480 US 321 [107 S Ct 1149; 94 L Ed 2d 347] (1987). [*Id.,* 508 US —; 124 L Ed 2d 345.]

In this case, it is clear that the patdown was proper under *Terry.* However, we find it impossible to conclude that the incriminating nature of a pill bottle is immediately apparent. In fact, the police officer was unable to make this determina-

tion until he withdrew it from defendant's pants and examined it visually so as to conclude that it contained cocaine. Merely from feeling the contours of a pill bottle, the officer was able to conclude that defendant carried a pill bottle, not that he carried contraband. The police officer claimed that people often carry drugs in pill vials and conceal them on their body. However, it was his visual inspection of the pill bottle, after removing it from defendant, rather than its "plain feel" that revealed the contents to be cocaine.

In *Dickerson,* the Supreme Court concluded that the police officer exceeded the "plain feel" exception when he manipulated the object with his fingers in order to decide what it was. Here, the officer could not make a determination of the contents of the bottle without removing it from defendant and visually inspecting it. Such visual inspection also exceeds the "plain feel" exception.

We note that a closed container may contain any number of innocent and legal items. A closed container generally requires visual inspection to determine its contents. We do not gainsay the considerable knowledge and experience officers possess in assessing situations and reasonably suspecting the need to stop, question and patdown citizens under *Terry.* However, their authority to engage in these actions does not justify a search of the scope involved here. The "plain feel" doctrine cannot be extended to permit police, during a *Terry* protective patdown, to rummage on a suspect's body exploring any container which, by feel, they deem suspicious.

The trial court erred in failing to suppress the cocaine found on defendant. It erred in admitting the drugs in the Fix-a-Flat can found in defendant's car. The police were not entitled to inventory the contents of defendant's car. While a brief

investigative stop was valid under *Terry,* the police lacked probable cause to arrest defendant until they discovered the contents of the pill bottle in his pants. Since we have concluded that the pill bottle was improperly seized and must be suppressed, the police lacked probable cause to arrest defendant. Lacking probable cause to arrest him, they were without authority to impound and inventory the contents of his car. *South Dakota v Opperman,* 428 US 364; 96 S Ct 3092; 49 L Ed 2d 1000 (1976); *People v Toohey,* 438 Mich 265; 475 NW2d 16 (1991). It is unnecessary to reach defendant's claim that his sentence was disproportionate under *Milbourn.*

Reversed.